Charles MAYHEW, Sr., Charles Mayhew, Jr., The Estate of Audrey Mayhew, and Sunnyvale Properties, Ltd., Petitioners,

v.

The TOWN OF SUNNYVALE, Respondent.

No. 95–0771.

Supreme Court of Texas.

Argued Oct. 24, 1996.

Decided March 13, 1998.

Rehearing Overruled May 8, 1998.

Don Black, P. Michael Jung, Dallas, Charles L. Siemon, Marcella Larsen, Boca Raton, FL, for Petitioners.

LaDawn H. Conway, Cole B. Ramey, Terry D. Morgan, Robert H. Freilich, Kansas City, MO, W. Alan Wright, Dallas, for Respondent.

ABBOTT, Justice, delivered the opinion for a unanimous Court.

We are confronted with two primary questions in this regulatory takings case. First, we must determine the extent to which the Mayhews' claims are ripe for our consideration. Second, we must decide whether the denial of the Mayhews' planned development proposal violated their constitutional rights. While we conclude that the Mayhews' claims are ripe, we hold that the Town did not violate their constitutional rights. We reverse the court of appeals' judgment dismissing the Mayhews' claims, and we render judgment that the Mayhews take nothing.

I

The Town of Sunnyvale, a Texas general law municipal corporation with a population of approximately 2,000 people, is located approximately twelve miles east of the central business district of Dallas. The Town contains approximately 10,941 acres of land, but approximately 8,190 acres are currently vacant. The Town's first zoning ordinance, adopted in 1965, allowed residential development at a density of 3.6 units per acre. In 1973, in response to septic tank failures, the Town modified its zoning ordinance and enacted a one-acre minimum lot size requirement. However, when sanitary sewer facilities were later made available to the Town, the Town did not repeal its one-acre minimum lot requirement.

The Mayhew family owns approximately 1196 acres of land in Sunnyvale. From 1941 to 1965, the Mayhews acquired 850 acres of their property at a cost of $372,000.00. The Mayhews used this property for ranching for a number of years. In 1985 and 1986, the Mayhews purchased an additional 346 acres in the Town for development purposes. The Mayhews' property comprises 26% of the land available for residential development in the Town.

In 1985, the Mayhews began meeting with various Town officials seeking permission to proceed with a planned development with a density in excess of the then allowable one-dwelling-unit-per-acre residential zoning.

The Mayhews told the Town a planned development would not be feasible under one-unit-per-acre zoning. In 1986, after meeting with the Mayhews, the Town adopted a comprehensive plan providing for a projected population of 25,000 by the year 2006, and 30,000 to 35,000 persons by the year 2016. The Town also amended article XV of its zoning ordinances to allow, upon council approval, planned developments with densities in excess of one dwelling-unit per acre.

In July 1986, after spending over $500,000 conducting studies and preparing evaluative reports, the Mayhews submitted their planned development proposal to the Town. If the proposal was approved, the Mayhews planned to sell their property to the Trammel Crow Company for development. Because Trammel Crow would only develop the property if it could build a minimum of 3,600 units, the Mayhews requested approval to build between 3,650 and 5,025 units on their land, a density of over three units per acre.

The Town employed a professional planning and engineering firm to initially review the proposal. This firm, after finding that the proposal satisfied each of the requirements of the Town's zoning ordinance, recommended approval of the proposal. The proposal was then forwarded to the Town's planning and zoning commission.

While the commission was reviewing the Mayhews' application, the Town council passed a moratorium on planned developments, which was in effect until the Spring of 1987. Despite the moratorium, the commission continued to consider the Mayhews' application. After four months of consideration, the commission recommended denial of the Mayhews' application on November 20, 1986. In support of its recommendation, the commission noted that the development would severely impact the ability of the Town to provide adequate municipal services. The commission also reasoned that the Town had a very unique character and lifestyle that differed from the proliferation of multi-family and single-family homes on small lots in adjoining municipalities. According to the commission, a less dense use of the property was preferable.

The Town council appointed a negotiating committee of two Town councilmen, the Town mayor, and the Town attorney. The Mayhews met with the committee and both sides tentatively agreed to a compromise development of 3,600 units. Subsequently, on January 13, 1987, the Town council met to vote on the proposal. During the council meeting, Charles Mayhew, Jr. told the council that anything less than approval for 3,600 units would be considered an outright denial. Despite the prior compromise, the Town council voted to deny the Mayhews' development proposal by a four-to-one vote. A subsequent meeting to reconsider the planned development request was canceled by the Town.

In March 1987, the Mayhews sued the Town and the four individual council members who voted against their proposal, alleging that the refusal to approve the planned development violated their state and federal constitutional rights to procedural due process, substantive due process, and equal protection. The Mayhews further alleged that the Town's decision was a taking of their property without payment of just or adequate compensation. The Mayhews also brought various statutory claims.

The Town and the individual council members moved for summary judgment, which the district court granted. On appeal, the court of appeals affirmed the summary judgment in favor of the individual council members, and also affirmed the summary judgment in favor of the Town on the Mayhews' statutory claims. However, the appellate court reversed the summary judgment on the Mayhews' constitutional claims against the Town, concluding that material fact questions existed regarding whether the Town violated the Mayhews' state and federal constitutional rights. *Mayhew v. Town of Sunnyvale*, 774 S.W.2d 284, 286 (Tex.App.—Dallas 1989, writ denied), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1049 (1991).

Upon remand, the district court held a bench trial. The court heard testimony from thirty-five witnesses, most of whom were experts. At the conclusion of the trial, the district court made numerous findings of fact

and conclusions of law, including findings that:

26. The Mayhew Ranch Planned Development was well-planned and satisfied all of the requirements contained in Article XV and the Zoning Ordinance of the Town of Sunnyvale.

36. Adequate steps were taken in the design of the Mayhew Ranch Planned Development to protect the public health, safety, welfare, and morals of the Town of Sunnyvale and its citizens.

40. Growth and development in the Town of Sunnyvale cannot possibly reach the population projection in the Comprehensive Plan of the Town of Sunnyvale under the Town's one-acre zoning.

78. The Planning and Zoning Commission's recommendations to the Town Council of November 20, 1986 had no basis in fact and were not rational.

82. The Town of Sunnyvale's one-acre zoning does not bear any factual relationship to valid planning principles or objectives.

87. The existing development in the Town of Sunnyvale is suburban and urban and any "rural" atmosphere that exists is the result of the existence of undeveloped private property.

99. In denying the application for planned development approval for the Mayhew Ranch Planned Development, the Town of Sunnyvale has refused to allow economically viable development on [the Mayhews'] property with the intention to prevent all development ... and thereby impose a servitude for the benefit of the public.

101. In denying the application for planned development approval ..., and in enacting numerous moratoria on applications for consideration of planned development approval, the Town of Sunnyvale has acted pursuant to an official policy not to allow development with a density of greater than one dwelling unit per acre.

106. Prior to the Town Council's action to deny the application for [the] planned development ..., the [Mayhews'] property had a fair market value of at least $9,700,-000.00.

107. The value of the [Mayhews'] property on January 13, 1987, with development approval ... and without the application of the one-acre zoning requirement, would have been greater than $15,000,000.00.

108. As a result of the Town Council's denial of the application for [the] planned development ..., and the continued application of the one-acre zoning, the fair market value of the [Mayhews'] property was reduced to $2,400,000.00.

115. The minimum residential density necessary for economic viability on [the Mayhews'] property is approximately 3,600 dwelling units or three dwelling units per acre.

117. Agriculture is not an economically viable use of [the Mayhews'] property.

118. No knowledgeable investor would purchase [the Mayhews'] property as it is currently zoned.

120. The Town Council's decision to deny the application for [the] planned development ... has the practical effect of depriving [the Mayhews] of the only economically viable use of their property.

121. The result of the Town Council's decision to deny the application for [the] planned development ... is to destroy the value of [the Mayhews'] property.

131. The actions of the Town of Sunnyvale reveal a pattern and practice which demonstrates the intent of the Town of Sunnyvale to deny any application for developmental approval with a density greater than one dwelling unit per acre.

133. The Town of Sunnyvale has closed the door on future reapplication by [the Mayhews] at a realistic or economically viable density.

Based on its findings, the district court concluded that the case was ripe for adjudication and that the Mayhews should prevail on their procedural due process, substantive due process, and equal protection claims under the federal and state constitutions. The district court further concluded that the Town's decision to deny the application for the planned development was an unconstitutional taking under both the federal and state

constitutions. The court rendered judgment in favor of the Mayhews, awarding $5 million in damages, $2.3 million in prejudgment interest, approximately $1.2 million in attorney's fees, and costs.

The court of appeals reversed the district court's judgment and dismissed the Mayhews' claims against the Town, holding that none of the claims was ripe for review. *Town of Sunnyvale v. Mayhew*, 905 S.W.2d 234 (Tex.App.—Dallas 1994). In a supplemental opinion, the court of appeals addressed the merits of the Mayhews' claims in light of this Court's opinion in *Taub v. City of Deer Park*, 882 S.W.2d 824 (Tex.1994), *cert. denied*, 513 U.S. 1112, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995). The court concluded that, even if the Mayhews' claims were ripe, the evidence was factually insufficient to support the trial court's findings. 905 S.W.2d at 259–68.

We granted the Mayhews' application for writ of error to consider whether their claims were ripe for review and whether judgment should be rendered on the Mayhews' state and federal constitutional claims.

## II

■ Our initial inquiry is whether the Mayhews' claims are ripe for this Court's review. Ripeness is an element of subject matter jurisdiction. *State Bar of Texas v. Gomez*, 891 S.W.2d 243, 245 (Tex.1994); *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex.1985). As such, ripeness is a legal question subject to de novo review that a court can raise sua sponte. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex.1993)(subject matter jurisdiction cannot be waived and may be raised for the first time on appeal by the parties or by the court); *North Alamo Water Supply Corp. v. Texas Dep't of Health*, 839 S.W.2d 455, 457 (Tex.App.—Austin 1992, writ denied)(issue of court's jurisdiction presented a question of law). *See also Reahard v. Lee County*, 30 F.3d 1412, 1415 (11th Cir.1994)(ripeness is a jurisdictional issue subject to a de novo review), *cert. denied*, 514 U.S. 1064, 115 S.Ct. 1693, 131 L.Ed.2d 557 (1995); *Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 163–64 (9th Cir.1993)(ripeness is a question of law subject to de novo review); *Herrington v. County of Sonoma*, 857 F.2d 567, 568 (9th Cir. 1988)(same), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989).

■ The ripeness requirement emanates, in part, from the separation of powers provision set out in article II, section 1 of the Texas Constitution. Under the separation of powers doctrine, courts are without jurisdiction to issue advisory opinions because such is the function of the executive department, not the judiciary. *Texas Ass'n of Business*, 852 S.W.2d at 444; *see also Public Util. Comm'n v. Houston Lighting & Power Co.*, 748 S.W.2d 439 (Tex.1987)("A court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe."); *City of Garland*, 691 S.W.2d at 605 (same); *Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex.1980)(Texas Constitution precludes district courts from giving advisory opinions in prematurely filed actions).

The ripeness doctrine conserves judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes. *See Browning–Ferris, Inc. v. Brazoria County*, 742 S.W.2d 43, 49 (Tex.App.—Austin 1987, no writ). In this regard, the state ripeness doctrine is similar to the federal ripeness doctrine in that it has both constitutional and prudential dimensions.

This Court has never addressed the ripeness of constitutional challenges to land use regulation. We are aware of only one published Texas decision, *City of El Paso v. Madero Dev.*, 803 S.W.2d 396, 400 (Tex. App.—El Paso 1991, writ denied), *cert. denied*, 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992), in which the ripeness of regulatory takings and related constitutional claims was analyzed. In that case, the court of appeals relied heavily on federal law to hold that the landowner's claims were not ripe. We agree that we should look to the experience of the federal courts in determining the ripeness of constitutional challenges

to land-use regulations.[1] *Cf. Texas Ass'n of Business,* 852 S.W.2d at 444 ("Because standing is a constitutional prerequisite to maintaining a suit under both federal and Texas law, we look to the more extensive jurisprudential experience of the federal courts on this subject for any guidance it may yield.").

## A

The federal courts have recognized, as a prudential matter, an essential prerequisite to the ripeness of federal regulatory takings and related constitutional claims. *Suitum v. Tahoe Regional Planning Agency,* —— U.S. ——, —————— & n. 7, 117 S.Ct. 1659, 1664–65 & n. 7, 137 L.Ed.2d 980 (1997). This "essential prerequisite" requires "a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 348, 106 S.Ct. 2561, 2565–66, 91 L.Ed.2d 285 (1986) (citations omitted). In other words, the federal courts have reasoned that a court cannot determine whether a taking or other constitutional violation has occurred until the court can compare the uses prohibited by the regulation to any permissible uses that may be made of the affected property.

Accordingly, in order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue.[2] *Suitum,*

—— U.S. at ——, 117 S.Ct. at 1665; *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985). A "final decision" usually requires both a rejected development plan and the denial of a variance from the controlling regulations. *Hamilton Bank,* 473 U.S. at 187–88, 105 S.Ct. at 3117; *see also MacDonald,* 477 U.S. at 351–52 & n. 8, 106 S.Ct. at 2567–68 & n. 8 (case was not ripe when a single "intense" subdivision proposal was rejected because a "meaningful application" had not been made); *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 293–97, 101 S.Ct. 2352, 2369–71, 69 L.Ed.2d 1 (1981)(Court refused to consider takings claim based on general regulatory provision that had not been applied to specific properties and from which no administrative relief had been sought); *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)("as-applied" constitutional challenge was not ripe because the property owners had not yet submitted a plan for the development of their property).

However, futile variance requests or reapplications are not required. *See Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1012 n. 3, 112 S.Ct. 2886, 2891 n. 3, 120 L.Ed.2d 798 (1992); *MacDonald,* 477 U.S. at 352 n. 8, 106 S.Ct. at 2567–68 n. 8; *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1232 (9th Cir.), *cert. denied,* 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994); *Southern Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 504 (9th Cir.1990), *cert. denied,* 502

1. It is possible that we are compelled to reach this result, at least with respect to the Mayhews' federal claims. While state procedural law generally determines the manner in which a federal question is to be presented in state court, that is not the case if federal substantive law defines its own procedural matrix. *See* TRIBE, AMERICAN CONSTITUTIONAL LAW § 3-24, at 166 (2d ed.1988). Because the United States Supreme Court has stated that the "final decision" prudential ripeness requirement "follows from the principle that only a regulation that 'goes too far' results in a taking under the Fifth Amendment," *Suitum v. Tahoe Regional Planning Agency,* —— U.S. ——, ——, 117 S.Ct. 1659, 1665, 137 L.Ed.2d 980 (1997) (citations omitted), a persuasive argument could be made that the "final decision" aspect of ripeness is not independent of federal substantive law. *See also MacDonald, Sommer*

*& Frates v. Yolo County,* 477 U.S. 340, 348, 106 S.Ct. 2561, 2565–66, 91 L.Ed.2d 285 (1986)(final decision is an "essential prerequisite" of a regulatory takings claim). In any event, we need not determine whether we are compelled by federal supremacy to rely on federal law because, in determining the ripeness of the Mayhews' regulatory takings claims in this case, we apply federal jurisprudence.

2. Moreover, before a regulatory takings claim can be maintained in federal court, a plaintiff must seek compensation through the procedures the state has provided for doing so. *Suitum,* —— U.S. at ——, 117 S.Ct. at 1665; *Hamilton Bank,* 473 U.S. at 194–95, 105 S.Ct. at 3120–21. This requirement does not apply in this case.

U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1575 (11th Cir.1989); *Hoehne v. County of San Benito,* 870 F.2d 529, 534–35 (9th Cir.1989); *Herrington v. County of Sonoma,* 857 F.2d at 569–70; *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1454–55 (9th Cir.), *modified on other grounds,* 830 F.2d 968 (9th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988).

Moreover, the term "variance" is "not definitive or talismanic;" it encompasses "other types of permits or actions [that] are available and could provide similar relief." *Southern Pacific,* 922 F.2d at 503; *see also Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1541 (11th Cir.)(aggrieved landowner must "have sought variances or pursued alternative, less ambitious development plans"), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *Landmark Land Co. of Oklahoma, Inc. v. Buchanan,* 874 F.2d 717, 721 (10th Cir.1989)(claim not ripe until initial permit application denied and some effort made to "compromise" with the city to allow some level of development). The variance requirement is therefore applied flexibly in order to serve its purpose of giving the governmental unit an opportunity to "grant different forms of relief or make policy decisions which might abate the alleged taking." *Southern Pacific,* 922 F.2d at 503.

The same "final decision" requirement applies to determine the ripeness of as-applied due process and equal protection challenges to a land-use decision. *See, e.g., Hamilton Bank,* 473 U.S. at 199–200, 105 S.Ct. at 3123–24 (concluding that due process claim under Fourteenth Amendment was not ripe because the requisite variance had not been sought to establish a "final decision," and utilizing the same rationale in analyzing the ripeness of the takings claim and the due process claim); *Taylor Inv., Ltd. v. Upper Darby Township,* 983 F.2d 1285, 1292–95 (3d Cir.1993)(final decision rule of *MacDonald* and *Hamilton Bank* applies to substantive due process, equal protection, and procedural due process claims), *cert. denied,* 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993); *Bigelow v. Michigan Dep't of Natural Resources,* 970 F.2d 154, 159–60 (6th Cir.1992)(procedural due process claim, which was related to plaintiff's takings claim, subject to the finality rule); *Eide v. Sarasota County,* 908 F.2d 716, 725 (11th Cir.1990)(finality requirement applies to substantive due process claim), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); *Herrington,* 857 F.2d at 569 (final decision requirement applies to substantive due process and equal protection claims); *Norco Constr., Inc. v. King County,* 801 F.2d 1143, 1145 (9th Cir.1986)(final decision requirement applies to procedural due process and equal protection claims).

However, a final decision on the application of the zoning ordinance to the plaintiff's property is not required if the plaintiff brings a facial challenge to the ordinance. *See Pennell v. City of San Jose,* 485 U.S. 1, 9–14, 108 S.Ct. 849, 856–59, 99 L.Ed.2d 1 (1988); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 386, 47 S.Ct. 114, 117–18, 71 L.Ed. 303 (1926); *Nasierowski Bros. Inv. Co. v. City of Sterling Heights,* 949 F.2d 890, 894–95 (6th Cir.1991); *Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield,* 907 F.2d 239, 242–43 (1st Cir.1990); *Beacon Hill Farm Assocs. II v. Loudoun County Bd. of Supervisors,* 875 F.2d 1081, 1084–85 (4th Cir.1989).

### B

The Mayhews alleged (1) just compensation takings claims, (2) "fails to substantially advance" takings claims, (3) substantive due process and due course claims, (4) equal protection claims, and (5) procedural due process and due course claims under the United States Constitution and Texas Constitution regarding the Town's denial of their planned development application for 3,600 units. The Mayhews also argue in their application for writ of error that their constitutional claims challenge the Town's continued application and enforcement of a blanket one-acre zoning designation on their property. We conclude, however, that this challenge is not independent from their claims stemming from the Town's denial of their planned development proposal. The record in this case clearly indicates that the Mayhews were only interested in the Town approving their develop-

ment request for 3,600 units. As Charles Mayhew, Jr. testified, anything less than 3,600 units, the Mayhews believed, was an outright denial of their application. The Mayhews' very theory at trial was that the only economically viable use of their property was to develop it in accordance with the development proposal that the Town rejected. While the Town's general one-acre zoning requirement almost certainly contributed to the Town's rejection of the Mayhews' application, the one-acre zoning requirement itself did not cause a discrete injury separate from the harm the Mayhews suffered as a result of the denial of their planned development proposal because the Mayhews had no intention of pursuing a development with less than 3,600 units.

The Town maintains that the Mayhews' claims regarding the denial of their planned development application are not ripe because the Mayhews submitted only one planned development application and did not thereafter reapply for development or submit a "variance." The Mayhews counter that, under the circumstances of this case, their planned development application and amended request for 3,600 units were sufficient, and that any further applications would have been futile. We agree with the Mayhews.

■ After the Town denied the Mayhews' planned development application for 3,600 units, the Mayhews did not thereafter request a variance. Moreover, the Mayhews did not file another planned development application. Instead, the Mayhews filed this suit. Normally, their failure to reapply or seek a variance would be fatal to the ripeness of their claims. *See MacDonald,* 477 U.S. at 351, 106 S.Ct. at 2567; *Hamilton Bank,* 473 U.S. at 188–91, 105 S.Ct. at 3117–19. However, under the unique circumstances of this case, we conclude that the Mayhews' constitutional challenges to the Town's denial of their planned development application for 3,600 units are ripe for this Court's review.

A planned development is not a typical request for a zoning change; the density, type, and location of particular uses in the development are left to the planning process and are determined through negotiations between the developer and the town. The evi-

dence in this case establishes the extent to which the Mayhews worked with the Town in attempting to have their development approved. The Mayhews originally requested approval to build between 3,650 and 5,025 units on their land. They spent over a year in negotiations with the Town, and expended over $500,000 preparing and developing the application. The Mayhews presented the project to the Town planning staff, the Town planning and zoning committee, and the Town council. After receiving a negative response from the planning and zoning committee, the Mayhews met with Town council members, and, in an effort to compromise, agreed to alter their application. The Mayhews then submitted a modified application to the Town council, which the council rejected.

The modified application that the Mayhews presented to the Town council requested 3,600 units, a reduction from their original request for approval. Such a compromise proposal can sometimes be sufficient to satisfy the variance requirement. *Executive 100, Inc.,* 922 F.2d at 1540 (aggrieved landowner must "have sought variances or pursued alternative, less ambitious development plans"); *Landmark Land Co.,* 874 F.2d at 721 (claim not ripe until initial permit application denied and some effort made to "compromise" with the city to allow some level of development).

Moreover, this modified application was not the most profitable use envisioned by the Mayhews, but rather the minimum number of units the Mayhews believed necessary to make an economically viable use of their land. In fact, the very theory espoused by the Mayhews at trial was that only improvements along the lines of their 3,600 unit proposed planned development would avert a regulatory taking. In other words, the Mayhews alleged that anything less than the Town allowing their planned development would deny the only economically viable use of their property.

The United States Supreme Court has indicated that such a claim may be ripe without the necessity of seeking a variance or filing a subsequent application. In *MacDonald,* after the county rejected the applicant's single

proposal to subdivide the property into 159 single-family and multi-family residential lots, the applicant immediately sued, alleging that the county had restricted the property to an open-space agricultural use, thereby appropriating the property. *MacDonald*, 477 U.S. at 342–44, 106 S.Ct. at 2562–64. Because the county's only action was its rejection of a single subdivision proposal, the Supreme Court held that the applicant's claim that the county had deprived it of all use of its property was not ripe. In such a situation, the Court reasoned that the applicant had not received the county's " 'final, definitive position regarding how it will apply the regulations at issue to the particular land in question.' " *Id.* at 351, 106 S.Ct. at 2567 (quoting *Hamilton Bank*, 473 U.S. at 191, 105 S.Ct. at 3118–19). But the Court noted that the applicant did not "contend that *only improvements along the lines of its 159–home subdivision plan would avert a regulatory taking.*" *Id.* at 352 n. 8, 106 S.Ct. at 2567–68 n. 8 (emphasis added). The Supreme Court accordingly implied that the result may have been different if the applicant's complaint had been that the only way to avert a regulatory taking was for the county to approve the subdivision proposal.

Of course, that is exactly the Mayhews' complaint. The Mayhews allege that anything less than approval for 3,600 units on their property constitutes a regulatory taking. The ripeness doctrine does not require a property owner, such as the Mayhews, to seek permits for development that the property owner does not deem economically viable. *See Beure–Co. v. United States,* 16 Cl. Ct. 42, 51 n. 11 (1988). We accordingly conclude that, under the circumstances of this case, the Mayhews were not required to submit additional alternative proposals, after a year of negotiations and $500,000 in expenditures, to ripen this complaint.

Any other holding would require the Mayhews to expend their own time and resources pursuing, and the Town's time and resources considering, a development proposal that the Mayhews would never actually develop. Requiring such a wasteful expenditure of resources would violate the Supreme Court's admonition that a property owner is "not required to resort to piecemeal litigation or otherwise unfair procedures in order to obtain [a final] determination." *MacDonald*, 477 U.S. at 352 n. 7, 106 S.Ct. at 2567–68 n. 7. The Town clearly was not going to approve the Mayhews' development proposal for 3,600 units, making a subsequent application or variance request for 3,600 units a futile act. We therefore hold that the Mayhews' claims that the Town violated their constitutional rights by denying their planned development proposal for 3,600 units are ripe for this Court's review.

### III

The Mayhews brought five separate claims against the Town under the federal and state constitutions, alleging "fails to substantially advance" takings claims, "just compensation" takings claims, substantive due process and due course claims, equal protection claims, and procedural due process and due course claims. The Mayhews urged in their application for writ of error that Texas takings jurisprudence follows the federal standards. Accordingly, for purposes of this case, we assume, without deciding, that the state and federal guarantees in respect to land-use constitutional claims are coextensive, and we will analyze the Mayhews' claims under the more familiar federal standards. *Cf. Tilton v. Marshall,* 925 S.W.2d 672, 677 n. 6 (Tex.1996)(assuming without deciding that the state and federal free exercise guarantees were coextensive with respect to relator's claims because relator did not demonstrate that the provisions should be applied differently).

▪ Before proceeding to analyze the Mayhews' five constitutional claims, we must consider the proper effect of the findings of fact made by the district court in this case. Although determining whether a property regulation is unconstitutional requires the consideration of a number of factual issues, the ultimate question of whether a zoning ordinance constitutes a compensable taking or violates due process or equal protection is a question of law, not a question of fact. *City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 804 (Tex.1984); *see also Hunt v. City of San Antonio,* 462 S.W.2d

536, 539 (Tex.1971); *DuPuy v. City of Waco*, 396 S.W.2d 103, 110 (Tex.1965). In resolving this legal issue, we consider all of the surrounding circumstances. *City of College Station*, 680 S.W.2d at 804; *see also Hunt*, 462 S.W.2d at 539; *City of Bellaire v. Lamkin*, 159 Tex. 141, 317 S.W.2d 43, 45 (1958); *City of Waxahachie v. Watkins*, 154 Tex. 206, 275 S.W.2d 477, 481 (1955). While we depend on the district court to resolve disputed facts regarding the extent of the governmental intrusion on the property, *cf. Republican Party of Texas v. Dietz*, 940 S.W.2d 86, 91 (Tex.1997), the ultimate determination of whether the facts are sufficient to constitute a taking is a question of law.[3]

### A. REGULATORY TAKING CLAIM

The Just Compensation Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." This prohibition has been incorporated through the Fourteenth Amendment to apply to the individual states. *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 175 n. 1, 105 S.Ct. 3108, 3110–11 n. 1, 87 L.Ed.2d 126 (1985); *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 241, 17 S.Ct. 581, 586, 41 L.Ed. 979 (1897). Similarly, article I, section 17 of the Texas Constitution provides, in pertinent part, that no "person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made...."

Takings can be classified as either physical or regulatory takings. Physical takings occur when the government authorizes an unwarranted physical occupation of an individual's property. *See Yee v. City of Escondido*, 503 U.S. 519, 522, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992). The Mayhews do not claim that the Town has physically taken their property. Rather, the Mayhews allege that the denial of their planned development constitutes a regulatory taking.

Zoning decisions are vested in the discretion of municipal authorities; courts should not assume the role of a super zoning board. *Goss v. City of Little Rock*, 90 F.3d 306, 308 (8th Cir.1996); *Burns v. City of Des Peres*, 534 F.2d 103, 108 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). However, despite the discretion afforded to municipal authorities, zoning decisions must comply with constitutional limitations. As a general rule, the application of a general zoning law to a particular property constitutes a regulatory taking if the ordinance "does not substantially advance legitimate state interests" or it denies an owner all "economically viable use of his land." *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). *See also Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S.Ct. 2309, 2316–17, 129 L.Ed.2d 304 (1994); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016, 112 S.Ct. 2886, 2893–94, 120 L.Ed.2d 798 (1992); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677 (1987); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485, 107 S.Ct. 1232, 1241–42, 94 L.Ed.2d 472 (1987).

The Mayhews allege, and the district court found, that the denial of the Mayhews' planned development did not substantially advance legitimate state interests and amounted to a taking because all economically viable use of their property was denied. We first analyze whether the Town's actions substantially advance legitimate governmental interests before determining whether the Town's actions denied the Mayhews all economically viable use of their property.

#### 1. *Substantially Advance Legitimate Interests*

A property regulation must "substantially advance" a legitimate governmental interest to pass constitutional muster. *See, e.g., Dolan*, 512 U.S. at 385, 114 S.Ct. at

---

**3.** The United States Supreme Court apparently also views the ultimate determinations in takings cases as a legal issue. *See United States v. Causby*, 328 U.S. 256, 259, 66 S.Ct. 1062, 1064–65, 90 L.Ed. 1206 (1946)(accepting Court of Claims' factual conclusion that the existence of govern- ment airplanes in the airspace immediately above the property destroyed its value while reserving for itself the legal conclusion of whether a compensable taking occurred under the Fifth Amendment).

2316–17; *Nollan,* 483 U.S. at 834, 107 S.Ct. at 3147. *See also City of College Station,* 680 S.W.2d at 805 (property regulation must be "substantially related" to a legitimate goal); *Hunt,* 462 S.W.2d at 539 (same); *Watkins,* 275 S.W.2d at 481 (same); *Lombardo,* 73 S.W.2d at 485 (same). While it is clear that a zoning ordinance that does not substantially advance a legitimate state interest constitutes a taking, the standards for determining what constitutes a legitimate state interest or what relation between a regulation and the state interest satisfies the "substantially advance" requirement in a regulatory takings case has not been clarified by the United States Supreme Court. *See, e.g., Nollan,* 483 U.S. at 834, 107 S.Ct. at 3147.

The Supreme Court has, however, indicated that "a broad range of governmental purposes and regulations" will satisfy these requirements. *Id.* at 834–35, 107 S.Ct. at 3147–48. Specifically, the Supreme Court has noted that the following state interests are legitimate state interests: protecting residents from the "ill effects of urbanization"; *Agins,* 447 U.S. at 261, 100 S.Ct. at 2141–42; enhancing the quality of life; *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 129, 98 S.Ct. 2646, 2661–62, 57 L.Ed.2d 631 (1978); and protecting a beach system for recreation, tourism, and public health; *Keystone,* 480 U.S. at 488, 107 S.Ct. at 1243–44; *Esposito v. South Carolina Coastal Council,* 939 F.2d 165, 169 (4th Cir.1991), *cert. denied,* 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992).

In *Agins,* the City of Tiburon adopted a zoning ordinance governing development of open space land that limited the plaintiffs to building between one and five single-family residences on the five acres of land which they had previously purchased for residential development. 447 U.S. at 257, 100 S.Ct. at 2139–40. The Court held that protecting the residents of Tiburon from the ill effects of urbanization by precluding the conversion of open-space land to urban uses was a legitimate government purpose. *Id.* at 261, 100 S.Ct. at 2141–42. *Cf. Penn Central Transp. Co.,* 438 U.S. at 129, 98 S.Ct. at 2661–62 (preservation of desirable aesthetic features); *Village of Belle Terre v. Boraas,* 416 U.S. 1,

9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974); *Berman v. Parker,* 348 U.S. 26, 32–33, 75 S.Ct. 98, 102–03, 99 L.Ed. 27 (1954); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 394–95, 47 S.Ct. 114, 120–21, 71 L.Ed. 303 (1926); *see also Christensen v. Yolo County Bd. of Supervisors,* 995 F.2d 161, 165 (9th Cir.1993)(preservation of agricultural uses of land a legitimate state interest); *Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield,* 907 F.2d 239, 244–45 (1st Cir.1990)(controlling both the rate and character of community growth a legitimate government purpose); *Pompa Construction Corp. v. City of Saratoga Springs,* 706 F.2d 418, 422 (2d Cir.1983)(discouraging conversion of open-space land to urban uses a legitimate state interest). Such zoning ordinances benefit "the public by serving the city's interest in assuring careful and orderly development of residential property with provision for open-space areas." *Agins,* 447 U.S. at 262, 100 S.Ct. at 2142.

The "substantial advancement" requirement examines the nexus between the effect of the ordinance and the legitimate state interest it is supposed to advance. *See Yee v. City of Escondido,* 503 U.S. 519, 530, 112 S.Ct. 1522, 1529–30, 118 L.Ed.2d 153 (1992); *see also generally Nollan,* 483 U.S. at 837, 107 S.Ct. at 3148–49; *Esposito,* 939 F.2d at 169. This requirement is not, however, equivalent to the "rational basis" standard applied to due process and equal protection claims. *Nollan,* 483 U.S. at 834 n. 3, 107 S.Ct. at 3147 n. 3. The standard requires that the ordinance "substantially advance" the legitimate state interest sought to be achieved rather than merely analyzing whether the government could rationally have decided that the measure achieved a legitimate objective. *Id.*

■ The Town's denial of the Mayhews' planned development application passes constitutional muster under this standard. In making this determination, we do not review the wisdom of the Town's decision. *See Smithfield Concerned Citizens,* 907 F.2d at 245. Rather, we are concerned only with whether the decision satisfies constitutional standards.

The Mayhews allege that the real reason behind the denial of their development application was to have their property serve as "borrowed" open space for the residents of the Town who primarily live on less than one-acre lots. In support of this contention, the Mayhews presented evidence negating some of the reasons given by the planning and zoning commission for the denial of their development application. For instance, the Mayhews presented evidence establishing, and the district court found, that sanitary sewer facilities would not be a problem for the Mayhews' planned development because the local sewage plant was operating in full compliance with EPA guidelines and had enough capacity to serve the additional residences contemplated in the Mayhews' planned development.

But the Town's planning and zoning commission came forth with a number of separate reasons for the denial of the Mayhews' application, several of which substantially advance legitimate state interests. The Town denied the development application in part because of the impact the development would have on the overall character of the community and the unique character and lifestyle of the Town which is different from that of adjoining municipalities where there is a proliferation of multi-family and single-family homes on small lots. Under the Supreme Court's decision in *Agins,* concern for such urbanization effects is clearly a legitimate state interest.

We also conclude that the denial of the Mayhews' development application substantially advances the Town's legitimate concern for protecting the community from the ill effects of urbanization. The Mayhews requested a planned development with 3,600 units in a Town with a population of only approximately 2,000 residents. Photographs in the record show that the Town is uniquely rural and suburban, with undivided two lane roads, clusters of trees, lakes and ponds, and houses on large lots. This community would change drastically if a large planned development with at least three residences per acre was built. The Mayhews' planned development would result in an estimated population increase of between 10,000 and 15,000 per-

sons, more than quadrupling the population of the Town. Simply put, the Town has a substantial interest in preserving the rate and character of community growth, and its action in denying the Mayhews' planned development furthers those interests.

### 2. *Just Compensation Takings Claim*

■ Our conclusion that the Town's action substantially advances a legitimate state interest does not end the takings inquiry, however. A compensable regulatory taking can also occur when governmental agencies impose restrictions that either (1) deny landowners of all economically viable use of their property, or (2) unreasonably interfere with landowners' rights to use and enjoy their property. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015–19 & n. 8, 112 S.Ct. 2886, 2893–95 & n. 8, 120 L.Ed.2d 798 (1992); *see also Taub v. City of Deer Park,* 882 S.W.2d 824, 826 (Tex.1994), *cert. denied,* 513 U.S. 1112, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995); *City of Austin v. Teague,* 570 S.W.2d 389, 393 (Tex.1978).

■ A restriction denies the landowner all economically viable use of the property or totally destroys the value of the property if the restriction renders the property valueless. *See, e.g., Dolan v. City of Tigard,* 512 U.S. 374, 385, 114 S.Ct. 2309, 2316–17, 129 L.Ed.2d 304 (1994); *Lucas,* 505 U.S. at 1015–16, 1020, 112 S.Ct. at 2893–94; *Taub,* 882 S.W.2d at 826; *City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 806 (Tex. 1984); *Teague,* 570 S.W.2d at 393. Determining whether all economically viable use of a property has been denied entails a relatively simple analysis of whether value remains in the property after the governmental action.

■ In contrast, determining whether the government has unreasonably interfered with a landowner's right to use and enjoy property requires a consideration of two factors: the economic impact of the regulation and the extent to which the regulation interferes with distinct investment-backed expectations. *See Lucas,* 505 U.S. at 1019 n. 8, 112 S.Ct. at 2895 n. 8; *Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659. The first factor, the economic impact of the regulation,

merely compares the value that has been taken from the property with the value that remains in the property. *Keystone,* 480 U.S. at 497, 107 S.Ct. at 1248. The loss of anticipated gains or potential future profits is not usually considered in analyzing this factor. *Andrus v. Allard,* 444 U.S. 51, 66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979); *see also Moore v. City of Costa Mesa,* 886 F.2d 260, 263 (9th Cir.1989), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). The second factor is the investment-backed expectation of the landowner. The existing and permitted uses of the property constitute the "primary expectation" of the landowner that is affected by regulation. *Penn Central,* 438 U.S. at 136, 98 S.Ct. at 2665; *see also Lucas,* 505 U.S. at 1017 n. 7, 112 S.Ct. at 2894 n. 7 (owner's reasonable expectations shaped by uses permitted by state law); *Esposito v. South Carolina Coastal Council,* 939 F.2d 165, 170 (4th Cir.1991), *cert. denied,* 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992)("the courts have traditionally looked to the existing use of property as a basis for determining the extent of interference with the owner's 'primary expectation concerning the use of the parcel.' ")(quoting *Penn Central,* 438 U.S. at 136, 98 S.Ct. at 2665). Knowledge of existing zoning is to be considered in determining whether the regulation interferes with investment-backed expectations. *See Pompa Construction Corp. v. City of Saratoga Springs,* 706 F.2d 418, 424–25 (2d Cir.1983).

The Town urges that its rejection of the Mayhews' application did not unconstitutionally deprive them of their property. The Town first contends that the district court found that the Mayhews' property retained a value of at least $2.4 million following the denial of the planned development application; thus, according to the Town, the property's value was not totally destroyed. The Town next urges that the denial of the development request did not unreasonably interfere with the Mayhews' property rights be-cause the Mayhews had no right to have their property "up-zoned" for a greater density of development. In other words, the Town asserts that the Mayhews had no reasonable investment-backed expectation to lose. The Town also maintains that the Mayhews were not singled out unfairly through the denial of the planned development proposal. Instead, the Town claims that the zoning applied evenly to all property owners in the Town and the Town denied applications other than just the Mayhews' proposal.[4]

The Mayhews counter, however, that this is not the typical denial of an up-zoning application. The Mayhews point out that the district court found that the only economically viable use of this property was to construct 3,600 residential units. The district court also found that agriculture was not an economically viable use of the property. Finally, the district court found that, with one-acre zoning, it would take a minimum of 150 years before the Mayhews could completely develop their property. Accordingly, the district court found that no reasonable investor would purchase the Mayhews' property.

We first must consider the effect of these fact-findings relied on by the Mayhews. As discussed previously, the ultimate determination of whether the facts are sufficient to constitute a taking is a question of law, but we depend on the district court to resolve disputed facts regarding the extent of the governmental intrusion on the property. Under substantive law, a regulatory taking occurs when governmental regulations deprive the owner of all economically viable use of the property or totally destroy the property's value. *Dolan,* 512 U.S. at 385, 114 S.Ct. at 2316–17; *Lucas,* 505 U.S. at 1015–16, 112 S.Ct. at 2893; *Taub,* 882 S.W.2d at 826. Some courts have made an alternative pronouncement that a taking occurs when the government does not allow any use of the property that is sufficiently desirable to per-

---

4. As Justice Scalia has observed, "Traditional land-use regulation (short of that which totally destroys the economic value of property) does not violate [the Takings Clause] because there is a cause-and-effect relationship between the property use restricted by the regulation and the social evil that the regulation seeks to remedy. Since the owner's use of the property is (or, but for the regulation would be) the source of the social problem, it cannot be said that he has been singled out unfairly." *Pennell v. City of San Jose,* 485 U.S. 1, 20, 108 S.Ct. 849, 861–62, 99 L.Ed.2d 1 (1988)(Scalia, J., dissenting).

mit the property owner to sell the property. *See, e.g., Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 95 F.3d 1422, 1433 (9th Cir.1996), *petition for cert. filed,* 66 U.S.L.W. 3509 (U.S. Jan. 26, 1998)(No. 97–1235); *Park Ave. Tower Assoc. v. City of New York,* 746 F.2d 135, 139 (2d Cir.1984), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1854, 85 L.Ed.2d 151 (1985). The district court's findings that there was no economically viable use of the property and that no reasonable investor would purchase the property purport to decide the ultimate legal issue of whether a taking has occurred. This, however, involves a question of law, and we therefore owe no deference to the trial court's "findings" in this regard. We will instead focus on the district court's underlying factual determinations regarding the extent of the governmental intrusion and the diminution in the property's value in determining whether the Town has taken the Mayhews' property without just compensation.

■ The relevant factual findings demonstrate that the Town has not totally destroyed all value of the property by denying the Mayhews' planned development proposal. In *Lucas,* the Supreme Court clarified that a taking occurs "when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle." *Lucas,* 505 U.S. at 1019, 112 S.Ct. at 2895 (emphasis in original). Because the trial court found that Lucas's property was rendered completely and wholly valueless by the regulations at issue, the Supreme Court concluded that a taking had occurred. *Id.* at 1019–20, 112 S.Ct. at 2895–96. In contrast, the district court in this case determined that, even after the denial of the Mayhews' planned development proposal, the property retained a value of $2.4 million. In such a situation, the governmental regulation has not entirely destroyed the property's value.

■ Even if the governmental regulation has not entirely destroyed the property's value, a taking can occur if the regulation has a severe enough economic impact and the regulation interferes with distinct investment-backed expectations. *See Lucas,* 505 U.S. at 1019 n. 8, 112 S.Ct. at 2895 n. 8 (takings are to be measured by the "economic impact of the regulation on the claimant and ... the extent to which the regulation has interfered with distinct investment-backed expectations"); *Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659 (same); *see also Taub,* 882 S.W.2d at 826 (sufficiently severe economic impact can constitute a taking). The reasonable investment-backed expectation of the claimant is critical to this analysis because it distinguishes this concept from those situations in which the landowner's property has been totally destroyed. Because we conclude that the Mayhews had no reasonable investment-backed expectation to build 3,600 units on their property, we hold that the Town has not unreasonably interfered with their right to use and enjoy their property by denying their planned development proposal.

■ When the Mayhews first began purchasing their property, the Town did not have a zoning ordinance in place. It is undisputed that the Mayhews originally purchased their property for ranching, not for development. They then used their property for ranching for nearly four decades. Historical uses of the property are critically important when determining the reasonable investment-backed expectation of the landowner. *See Esposito,* 939 F.2d at 170 ("the courts have traditionally looked to the existing use of property as a basis for determining the extent of interference with the owner's 'primary expectation concerning the use of the parcel.' ")(quoting *Penn Central,* 438 U.S. at 136, 98 S.Ct. at 2665). After four decades of ranching their property in a Town with a population of no more than 2,000 people, the Mayhews did not have a reasonable investment-backed expectation that they could pursue an intensive development of 3,600 units that would more than quadruple the Town's population.

■ The Mayhews' subsequent purchases of property in 1985 and 1986 were for purposes of development. However, at this time, the Town's zoning ordinances had restricted development to one unit per acre for the preceding twelve years. The existing zoning of the property at the time it was

acquired is to be considered in determining whether the regulation interferes with investment-backed expectations. *See Pompa Construction Corp.*, 706 F.2d at 424–25. We do not believe that the Mayhews had a reasonable investment-backed expectation to build 3,600 units on their 1,200 acres when the Town's zoning ordinances had for twelve years limited development to one unit per acre.

Accordingly, we render judgment against the Mayhews on their regulatory takings claims. The Town's denial of the planned development substantially advanced legitimate state interests and did not totally destroy the value of the Mayhews' property or unreasonably interfere with their rights to use and enjoy their property.

## B. SUBSTANTIVE DUE PROCESS

■ A court should not set aside a zoning determination for a substantive due process violation unless the action "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88, 48 S.Ct. 447, 448, 72 L.Ed. 842 (1928); *see also Pennell v. City of San Jose*, 485 U.S. 1, 11, 108 S.Ct. 849, 857, 99 L.Ed.2d 1 (1988); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); *Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield*, 907 F.2d 239, 243–44 (1st Cir.1990); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir. 1989).

■ A generally applicable zoning ordinance will survive a substantive due process challenge if it is designed to accomplish an objective within the government's police power and if a rational relationship exists between the ordinance and its purpose. *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir.1996); *Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 165 (9th Cir.1993); *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 507 (9th Cir.1990), *cert. denied*, 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991);

*Smithfield Concerned Citizens*, 907 F.2d at 243–44; *Stansberry v. Holmes*, 613 F.2d 1285, 1289 (5th Cir.), *cert. denied*, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980). This deferential inquiry does not focus on the ultimate effectiveness of the ordinance, but on whether the enacting body could have rationally believed at the time of enactment that the ordinance would promote its objective. *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). If it is at least fairly debatable that the decision was rationally related to legitimate government interests, the decision must be upheld. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 723–24, 66 L.Ed.2d 659 (1981); *FM Properties*, 93 F.3d at 175. The ordinance will violate substantive due process only if it is *clearly* arbitrary and unreasonable. *See Esposito v. South Carolina Coastal Council*, 939 F.2d 165, 170 (4th Cir.1991), *cert. denied*, 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992).

In *Greenbriar*, 881 F.2d at 1577–80, the Eleventh Circuit was faced with a substantive due process challenge similar to the challenge made by the Mayhews in this case. The fact finder determined in that case, based on conflicting evidence on whether the proposal was in the best interest of the community, that the city council had acted arbitrarily and capriciously in refusing to rezone the subject property based on "political pressure" from constituents. The Eleventh Circuit held, however, that this evidence was not sufficient to establish that the city acted irrationally or arbitrarily in rejecting the application. *Id.* at 1580; *see also Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827–29 (4th Cir.1995)(a landowner who speculatively purchases property based on the possibility of an upzoning does not demonstrate a substantive due process violation when the county refuses to grant upzoning).

■ We likewise conclude that the Town did not act irrationally or arbitrarily in denying the Mayhews' planned development application. The Town's concerns regarding the urbanization effects of the development are legitimate governmental interests, and

the denial of the development application is clearly rationally related to those interests.

## C. EQUAL PROTECTION

■■■ An as-applied equal protection claim requires that the government treat the claimant different from other similarly-situated landowners without any reasonable basis. *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1541 (11th Cir.), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991). The ordinance generally must only be rationally related to a legitimate state interest to survive an equal protection challenge, unless the ordinance discriminates against a suspect class. *Christensen v. Yolo County Bd. of Supervisors,* 995 F.2d 161, 165 (9th Cir.1993); *Southern Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 507 (9th Cir.1990), *cert. denied,* 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). Economic regulations, including zoning decisions, have traditionally been afforded only rational relation scrutiny under the equal protection clause. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985); *Clajon Production Corp. v. Petera,* 70 F.3d 1566, 1580 (10th Cir.1995); *see also City of New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *Barshop v. Medina Cty. Underground Water Conservation Dist.,* 925 S.W.2d 618, 631–32 (Tex.1996).

■■■ The Mayhews claim that they are not being treated the same as other property owners in the Town that have higher density properties. However, they are not similarly situated. A landowner seeking a zoning change for a 1200 acre development is not similarly situated to a landowner seeking to build on a small parcel of land. There is no showing that the Mayhews have been treated differently from other property owners seeking a planned development on their property.

The Mayhews also allege that the zoning ordinance has a disproportionate impact on racial minorities, thus invoking a suspect class. At trial, however, the Mayhews stipulated that they abandoned any "allegation of racial animus as a motivation for the actions either in regard to the planned development

or in regard to the existing zoning which applies to the subject property." That stipulation applies in this Court as well.

■■■ Finally, the Mayhews claim that the Town's zoning ordinance was not rationally related to a legitimate government purpose. In analyzing this claim, we apply the same standards as to their substantive due process analysis. For the same reasons that we concluded that the Town's actions did not violate substantive due process, we conclude that the Town has not violated the Mayhews' equal protection rights.

## D. PROCEDURAL DUE PROCESS

■■■ If an individual is deprived of a property right, the government must afford an appropriate and meaningful opportunity to be heard to comport with procedural due process. *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982). Accordingly, a plaintiff alleging a procedural due process takings claim must establish that he was deprived of notice and an opportunity to be heard with respect to a decision affecting his property rights. *Cf. Anderson v. Douglas County,* 4 F.3d 574, 578 (8th Cir.1993), *cert. denied,* 510 U.S. 1113, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); *Herrington v. County of Sonoma,* 834 F.2d 1488, 1501 (9th Cir.), *modified on other grounds,* 857 F.2d 567 (9th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989).

■■■ The Mayhews were given notice and an opportunity to be heard with respect to their development application. While the Mayhews complain that the procedure was unfair because the Town applied ad hoc unreviewable standards in making its determination and that the Town lacked the discretion to deny the application because it satisfied the applicable standards, this is not the proper inquiry. Zoning is a legislative act. *See, e.g., Thompson v. City of Palestine,* 510 S.W.2d 579, 581 (Tex.1974). In making a legislative zoning determination, a city or town is entitled to consider all the facts and

circumstances which may affect the property, the community, and the welfare of its citizens. *Cf. City of El Paso v. Donohue*, 163 Tex. 160, 352 S.W.2d 713, 716 (1962). To satisfy the requirements of procedural due process, then, the Town must only provide notice and an opportunity to be heard, which it did. We conclude that the Mayhews are not entitled to prevail on their procedural due process claims.

\* \* \* \*

We reverse the court of appeals' judgment dismissing the Mayhews' claims on ripeness grounds. Rather than dismissing their claims, we render a take-nothing judgment against the Mayhews because we hold that, as a matter of law, the Mayhews did not prevail on their just compensation takings claims, "substantially advances" takings claims, substantive due process and due course claims, equal protection claims, and procedural due process and due course claims under the federal and state constitutions.