

# KEN PAXTON

ATTORNEY GENERAL OF TEXAS

July 14, 2017

The Honorable Donna Campbell, M.D.
Chair, Committee on Veteran Affairs
    and Border Security
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. KP-0155

Re: Whether under certain circumstances municipal tree preservation ordinances may violate the Takings Clause of the Texas Constitution (RQ-0164-KP)

Dear Senator Campbell:

You ask whether "under certain circumstances municipal tree preservation ordinances may violate the Takings Clause of the Texas Constitution."[1] A number of Texas municipalities have ordinances regulating the removal of trees within their jurisdiction.[2] The ordinances vary widely with regard to when individual cities regulate tree removal, the sizes and types of trees regulated, and the conditions imposed on property owners desiring to remove trees. Many of the ordinances require a property owner to obtain a permit before removing a protected tree, and they often require property owners to mitigate any loss of trees by paying a fee, planting trees elsewhere, or some other action. Briefing submitted with your request references two specific municipal tree preservation ordinances. Request Letter at 2–5. However, you ask about the constitutionality of the ordinances generally without regard to a particular ordinance, and we advise accordingly.

The Takings Clause of the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17(a). Although the Texas takings provision is worded differently than the Takings Clause of the United States Constitution, it has been described as "comparable." See Sheffield Dev. Co. v. City of Glenn Heights, 140

---

[1]Letter from Honorable Donna Campbell, M.D., Chair, Senate Comm. on Veteran Affairs & Border Sec., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (June 8, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]See, e.g., Abilene, Tex., Land Dev. Code §§ 4.2.3.1–4.2.3.4; Allen, Tex., Land Dev. Code §§ 7.06–7.06.9; Austin, Tex., Envtl. Criteria Manual §§ 3.1.0–3.7.1; Bunker Hill Village, Tex., Code §§ 4-181–4-185; Carrollton, Tex., Code §§ 155.01–.10; Dallas, Tex., Code §§ 51A-10.130–.132; Houston, Tex., Code §§ 33.123, 33.130; League City, Tex., Code § 102-12; McKinney, Tex., Code § 146-136; San Antonio, Tex., Unified Dev. Code § 35-523.

S.W.3d 660, 669 (Tex. 2004). Texas courts therefore typically look to federal cases for guidance on the constitutionality of a taking. *Id.*

We find no cases analyzing the constitutionality of tree preservation ordinances under the Takings Clause of the Texas Constitution, so we refer to general Takings Clause jurisprudence for guidance. Both the United States and Texas Supreme Courts hold certain regulatory action to constitute *per se* takings, requiring automatic compensation. *See Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1014–15 (1992); *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 426 (1982). If a governmental entity "denies all economically beneficial or productive use of land" to a private property owner, a *per se* taking occurs.[3] *Lucas,* 505 U.S. at 1015; *Sheffield Dev. Co.,* 140 S.W.3d at 671. "Determining whether all economically viable use of a property has been denied entails a relatively simple analysis of whether value remains in the property after the governmental action." *Mayhew v. Town of Sunnyvale,* 964 S.W.2d. 922, 935 (Tex. 1998). Thus, if a municipal tree preservation ordinance operates to deny a property owner all economically beneficial or productive use of land, the ordinance will result in a taking that requires just compensation.

Outside of *per se* regulatory takings, a compensable regulatory taking may occur when a governmental entity imposes restrictions that "unreasonably interfere with landowners' rights to use and enjoy their property." *Id.* Determining whether regulatory action unreasonably interferes with a specific landowner's right to use and enjoy his or her property requires consideration of multiple factors, which the United States Supreme Court set out in *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124 (1978). Those factors include: (1) the economic impact of the regulation; (2) the extent to which the regulation interferes with distinct investment-backed expectations; and (3) the character of the governmental action. *Id.; Sheffield Dev. Co.,* 140 S.W.3d at 672.

The first factor, the economic impact of the regulation, "compares the value that has been taken from the property with the value that remains in the property." *Mayhew,* 964 S.W.2d at 935–36. Analysis under this factor may include consideration of both the landowner's lost development profits as a result of the regulatory action and the investment profits since original acquisition of the property. *Sheffield Dev. Co.,* 140 S.W.3d at 677. If application of a municipal tree preservation ordinance to a specific property results in significant economic impact to the owner, that fact will weigh in favor of finding a taking.

The second factor, the investment-backed expectation of the landowner, considers the existing and permitted use of the property as a basis for determining the extent of interference with

---

[3]In addition, where a governmental entity requires an owner to suffer a permanent physical invasion of the property, the United States Supreme Court has deemed such action a *per se* taking requiring just compensation. *Loretto,* 458 U.S. at 426. Further describing what it meant by "physical invasion," the Court explained "where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution." *Id.* at 427. The Court distinguished between a physical invasion of a property and a regulation that restricts the use of the property. *Id.* Because requiring the preservation of trees does not result in any governmental invasion or occupation of the property, a court would be unlikely to conclude that a *per se* physical taking akin to *Loretto* resulted.

the owner's primary expectation concerning the use of the land. *Penn Cent.*, 438 U.S. at 136; *Mayhew*, 964 S.W.2d at 936. In analyzing this factor, courts will consider regulations existing at the time the landowner acquired the property to determine the owner's reasonable investment-backed expectations. *Id.* at 937–38. To the extent that a landowner acquired property prior to the adoption of a municipal tree preservation ordinance, that fact will weigh in favor of finding a taking.

The third factor, the character of the governmental action, considers the purpose of the regulation and how it affects specific landowners in relation to the general public. The United States Supreme Court explained that a taking "may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Cent.*, 438 U.S. at 124. Under this factor, courts will also consider whether the regulatory action is generally applicable or exclusively directed at a specific landowner. *See Sheffield Dev. Co.*, 140 S.W.3d at 678.

Given the *Penn Central* factors, the enforcement of a tree preservation ordinance to a specific property could in certain instances result in a taking that requires just compensation. However, that determination involves "essentially ad hoc, factual inquiries" that will depend on the specific property and the specific government action in each case. *Penn Cent.*, 438 U.S. at 124. Furthermore, while the *Penn Central* factors serve as "guiding considerations" in determining whether a taking occurred, the courts caution that "these factors do not comprise a formulaic test." *Sheffield Dev. Co.*, 140 S.W.3d at 672. Thus, whether a regulatory taking occurred in any specific context requires careful examination and weighing of private and public interests and the relevant circumstances specific to each case. *Id.*; *see* Tex. Att'y Gen. Op. No. GA-0750 (2009) at 2 (explaining that this office does not investigate or resolve factual disputes in the opinion process).

## S U M M A R Y

If a municipal tree preservation ordinance operates to deny a property owner all economically beneficial or productive use of land, the ordinance will result in a taking that requires just compensation under article I, section 17 of the Texas Constitution.

Furthermore, a court is likely to find a regulatory taking if a municipal tree preservation ordinance, as applied to a specific property, imposes restrictions that unreasonably interfere with landowners' rights to use and enjoy their property. In analyzing whether the interference is unreasonable, the court will consider all relevant circumstances, including: (1) the economic impact of the ordinance; (2) the extent to which the ordinance interferes with distinct investment-backed expectations; and (3) the character of the governmental action.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee