IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 02-1176
════════════
 
Hallco Texas, Inc., 
Petitioner,
 
v.
 
McMullen County, respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 4, 
2005
 
 
Justice Hecht, joined by Justice Medina and Justice Willett, dissenting.
 
 
A 
regulatory-takings claim may challenge a land-use restriction on its face or as 
applied to particular property.[1] A facial challenge is ripe when the 
restriction is imposed,[2] but an as-applied claim is not ripe 
until the regulatory authority has made a final decision regarding the 
application of the regulation to the property.[3] “A ‘final decision’ usually requires 
. . . the denial of a variance from the controlling regulations” 
unless a request for variance would be futile.[4]
This case 
illustrates how the government can use this ripeness requirement to whipsaw a 
landowner. The government can argue either that there was no request for a 
variance when there should have been, or that the request was not specific 
enough, or that it was not reasonable enough, or that there was insufficient 
time to consider it — and therefore the landowner’s regulatory-takings claim is 
premature, unripe, and should be dismissed. Or else it can argue that a request 
for a variance would be a waste of time, or that none was authorized, or that 
the landowner should have known his ridiculous proposal would never be seriously 
considered — and therefore his claim is late, barred, and should be dismissed. 
One way or the other, the result is the same. Ripening a regulatory-takings 
claim thus becomes a costly game of “Mother, May I”, in which the landowner is 
allowed to take only small steps forwards and backwards until exhausted.
When Hallco 
Texas, Inc. first sued McMullen County, alleging that an ordinance aimed at 
stopping Hallco from using its property as a nonhazardous industrial waste 
landfill effected a compensable taking, the County argued that it “ha[d] the 
authority to grant a variance, or even to rescind the ordinance, if Hallco 
present[ed] sufficient justification”, and therefore, Hallco’s action was not 
ripe because it “ha[d] not obtained a final decision from the County”. This 
embarrassing fact is buried in a footnote to the Court’s opinion[5] and never discussed. After Hallco 
lost, it submitted a lengthy and detailed request for a variance, which the 
County summarily denied. Now in this, Hallco’s second state-court suit against 
the County on its regulatory-takings claim (it has also sued three times in 
federal court), the County argues that the prior action was ripe after all and 
bars this one because requesting a variance was futile. The Court agrees and 
holds that Hallco should not have “another bite at the apple”,[6] as if being forced to bob for apples 
is the same as ever getting a bite.
The Court 
wants Hallco to know that “[w]e are sympathetic”.[7] But it adds: “McMullen County 
unquestionably had the power to regulate land use, especially around a water 
supply like Choke Canyon Reservoir, and in the abstract, its doing so would 
hardly ever give rise to takings liability.”[8] Poor Hallco. It should have known 
better than to take the County at its word because it could “hardly ever” win 
anyway, even if it was successful in obtaining a permit to operate a landfill, 
even if the County deprived Hallco of the lawful use and economic benefit of its 
property. After spending millions of dollars over twelve years, Hallco, I rather 
imagine, would prefer justice to sympathy.
I would take 
the County at its word and remand the case for proceedings on the merits, if 
Hallco can endure yet another round of litigation. Accordingly, I respectfully 
dissent.
I
In January 
1991, Hallco bought 128 acres of raw land in rural McMullen County (1,142 sq. 
mi., 1990 pop. 817), a little under two miles from Choke Canyon Reservoir, a 
26,000-acre lake on the Frio River halfway between San Antonio and Corpus 
Christi. The lake supplies water to Corpus Christi and others and provides a 
setting for recreational activities. The only community in the vicinity of 
Hallco’s property is Calliham, some two-and-one-half miles away, which had about 
50 residents. Otherwise, the area is mostly pasture.
Hallco bought 
the property for use as a Class I nonhazardous industrial waste landfill.[9] No local land-use regulations 
restricted solid waste disposal on the property Hallco acquired. Since 1971, 
Texas counties have been authorized to prohibit by ordinance the disposal of 
solid waste in specific areas where it is a threat to public health, safety, and 
welfare,[10] but McMullen County had never had 
such an ordinance. All Hallco needed to operate a landfill was a state permit 
from what was then the Texas Water Commission (later the Texas Natural Resource 
Conservation Commission, and now the Texas Commission on Environmental Quality, 
all referred to simply as “the Commission”).[11] Hallco applied for the permit in July 
1992.
The County 
opposed Hallco’s plans from the start. Eleven days after Hallco acquired the 
property, the commissioners court adopted a resolution opposing the proposed 
landfill, expressing concern that it might contaminate the reservoir, the Frio 
River, the nearby Nueces River, and groundwater, jeopardize residents, 
livestock, vegetation, and soil, and stink.[12] The County also intervened in the 
Commission proceeding along with Corpus Christi and others to oppose Hallco’s 
permit application. But not until June 1993, after the application had been 
pending nearly a year and Hallco had spent some $800,000 on the proposed 
landfill and permit process, did the commissioners court adopt an ordinance[13] prohibiting solid waste disposal 
within three miles of the reservoir.[14] Although the County had no technical 
or scientific studies to support the restriction, the ordinance recited that
 
the soil in the area of the lake is porous and subsurface 
materials tend to be unstable and volatile; . . . the disposal of 
solid waste within three (3) miles of Choke Canyon Lake would constitute a 
threat to the public health, safety and welfare; and . . . the present 
technology available with regard to the installation, operation and maintenance 
of solid waste disposal sites is insufficient to prevent contamination of 
adjacent areas . . . .[15]
 
Despite this 
ordinance and opposition by the County and others, the Commission did not 
determine that Hallco’s operation of a landfill would be harmful to the public 
and instead issued a 78-page revised final draft permit in February 1995, 
detailing the specifications for a landfill operation as recommended by the 
Commission staff.
Two weeks 
later, Hallco sued the County in the United States District Court for the 
Southern District of Texas,[16] alleging in part that the County’s 
ordinance was a regulatory-taking requiring compensation under the Fifth 
Amendment to the United States Constitution.[17] Around the same time, Hallco also 
filed its regulatory-taking claim in state court, asserting violations of both 
the Fifth Amendment and article I, section 17 of the Texas Constitution.[18] The County immediately moved to 
dismiss the federal-court action, asserting that it was not ripe for two 
reasons: Hallco had not obtained a final decision from the county regarding the 
application of the ordinance — in effect, a variance — and Hallco had not fully 
pursued relief in state court. Both were prerequisites to suit in federal court 
under the United States Supreme Court’s decision in Williamson County 
Regional Planning Commission v. Hamilton Bank.[19] Hallco responded that it should be 
excused from requesting a variance since the ordinance did not provide for one 
and any request would be futile. In reply, the County insisted that a variance 
was possible and that, in any event, state proceedings had to be exhausted:
 
[T]he Supreme Court [in Williamson] has held that 
regulatory takings claims, such as the one presented in this case, are not ripe 
for federal adjudication unless the Plaintiff: 1) obtains a final decision from 
the regulatory entity (here, the County) regarding the application of the 
ordinance or regulation . . . to his property; and 2) seeks just 
compensation through available state procedures.
 
. . . Hallco does not dispute that it has satisfied 
neither prong of Williamson: it has not obtained a final decision from 
the County and it has not sought redress through available state procedures. 
Instead, Plaintiff argues only that it would be futile to approach the county 
for a final decision on the application of the ordinance to its 
property.
 
[Hallco] offers absolutely no authority for the proposition 
that futility is an excuse to the requirement of finality. Even if there were a 
futility exception, at least one application for variance would be required to 
establish futility. Contrary to [Hallco’s] assertion, the fact that the 
ordinance does not contain a provision for reviewing how the ordinance will be 
applied to particular property does not establish that it is futile; the 
Commissioners Court has the authority to grant a variance, or even to rescind 
the ordinance, if Hallco presents sufficient justification. Therefore, 
[Hallco’s] argument has no merit.
 
Moreover, [Hallco] wholly fails to address the consequences of 
its failure to seek redress through available state court procedures. The 
Williamson case itself makes it abundantly clear that state remedies must 
be sought in state court prior to bringing a federal takings claim.
 
Without 
deciding whether Hallco had satisfied Williamson County’s first 
requirement, the district court dismissed the case in August 1995 for failure to 
satisfy the second:
 
It is arguable whether Hallco meets the first condition. 
Apparently, it has neither submitted a plan to the County nor sought a variance 
or waiver from the Commissioners Court. Hallco argues that the ordinance 
constitutes a final decision because, unlike the regulation in Williamson 
County, this ordinance does not expressly provide any means for obtaining 
variances from its provisions. . . . The Court will not dwell on this 
argument since Hallco has not met the second ripeness condition.
 
“[B]efore a takings claim is ripe, the claimant must 
unsuccessfully seek compensation. Short of that, it must be certain that the 
state would deny that claimant compensation were he to undertake the 
obviously futile act of seeking it.” Samaad v. City of Dallas, 940 F.2d 
[925, 934 (5th Cir. 1991)] (emphasis in 
original). Under Article I, § 17 of the Texas Constitution, property owners 
claiming an uncompensated taking may seek compensation through an inverse 
condemnation suit. See Westgate Ltd. v. State, 843 S.W.2d 448, 452 
(Tex. 1992). Hallco makes no claim to have sought just compensation; therefore, 
its takings claim is premature.[20]
 
The parties 
then turned to the state-court action, referred to as Hallco I. 
Though Hallco still had not requested a variance from the County, the state 
court, like the federal court, did not determine whether such a request was a 
prerequisite to Hallco’s action. Instead, the trial court in May 1996 granted 
summary judgment for the County in part on the ground that prohibiting Hallco’s 
proposed landfill operation did not constitute a taking of its property 
requiring compensation under the state and federal constitutions. In April 1997, 
the court of appeals affirmed, reasoning as follows:
 
We find that Hallco’s takings claim must fail because he did 
not have a cognizable property interest of which the government action could 
deprive him.
 
Hallco’s takings claim is grounded in the idea that it has a 
constitutionally protected property interest or entitlement to use its property 
for waste disposal, and that the McMullen County ordinance deprived him of that 
right or entitlement. However, Hallco has never had the right to dispose of 
industrial waste on its property, and does not now have a right to dispose of 
such waste. . . .
 
In Texas, the Legislature has defined when property owners may 
dispose of solid waste on their property via 
the permitting process; Tex. Health 
& Safety Code Ann. § 361.061‑.345 (Vernon 1992 & Supp. 1997). 
Even if Hallco already had a permit, by definition it would not have a property 
interest in disposal of solid waste. TNRCC regulations define permits as not 
being a property interest or a vested right in the permittee. See 30 
Tex. Admin. Code 
§ 305.122(b) (West 1996).
 
The only way the McMullen County regulation affected Hallco 
was in denying it the right to operate a solid waste facility on the proposed 
site. A mere expectancy of future services which would render the land more 
valuable, in the absence of a contract, is not a vested property right for 
purposes of determining whether a taking has occurred. Estate of Scott v. 
Victoria County, 778 S.W.2d 585, 592 (Tex. App.—Corpus Christi 1989, no 
writ). The McMullen County ordinance does not otherwise impact on use of the 
property. Because Hallco did not have a property interest in disposal of solid 
waste on its property, we hold that the ordinance in question did not constitute 
a taking as a matter of law.[21]
 
The court of 
appeals did not discuss whether the case was ripe given that Hallco had not 
requested a variance. Hallco did not appeal further.
The 
Commission never approved Hallco’s permit, but its application remained 
pending.[22] In August 1999, about two years after 
the judgment in Hallco I was final on appeal, Hallco requested a 
variance from the ordinance. The lengthy request included the revised final 
draft permit issued by the Commission and a valuation of the property, both of 
which were obtained after the County enacted its ordinance. The valuation showed 
that the property was worth $5.2 million if operated as a landfill but only 
$58,300 otherwise, and that a landfill business operated on the property would 
be worth $15,870,000. The County heard Hallco’s presentation of its request but 
took no further action.
In December 
1999, Hallco filed this action, referred to as Hallco II, against the 
County, again asserting a regulatory taking of its property. Besides its 
constitutional claims, Hallco also sued under the Texas Private Real Property 
Rights Preservation Act.[23] Concerned that the state action might 
not prevent the running of limitations on a federal action, Hallco also filed 
the same action in federal court.[24] The federal court rejected Hallco’s 
concerns and dismissed the action.[25] The County moved for summary judgment 
in the state proceeding, arguing that Hallco had not suffered a compensable 
taking of its property. The County did not argue that it lacked authority to 
grant a variance or reconsider Hallco’s proposal; the County argued only that 
Hallco had not made a case for a variance or reconsideration. The County also 
argued that this action is barred by Hallco I and by limitations and 
laches. The trial court granted summary judgment for the County without 
specifying the grounds.
The court of 
appeals “reaffirm[ed]” its holding in Hallco I that “because Hallco did 
not have a property interest in the disposal of solid waste on its property, the 
ordinance did not constitute a taking as a matter of law.”[26] The court added that without a state 
permit for a landfill, “Hallco did not have a distinct investment-backed 
expectation that it could use the property for solid waste disposal, and use of 
the property for solid waste disposal was neither an existing nor a permitted 
use.”[27] The court did not mention Hallco’s 
statutory claim.
II 
The ripeness 
requirement for regulatory-takings claims stems from the root of such claims, 
first stated by Justice Holmes:
 
while property may be regulated to a certain extent, if 
regulation goes too far it will be recognized as a taking. . . . 
[T]his is a question of degree — and therefore cannot be disposed of by general 
propositions. . . . [T]he question at bottom is upon whom the loss of 
the changes desired should fall.[28]
 
“It follows 
from the nature of a regulatory takings claim,” the United States Supreme Court 
has since observed, “that an essential prerequisite to its assertion is a final 
and authoritative determination of the type and intensity of development legally 
permitted on the subject property. A court cannot determine whether a regulation 
has gone ‘too far’ unless it knows how far the regulation goes.”[29]
Thus, as we 
noted above, the Supreme Court held in Williamson County that “a claim 
that the application of government regulations effects a taking of a property 
interest [under the Fifth Amendment] is not ripe until the government entity 
charged with implementing the regulations has reached a final decision regarding 
the application of the regulations to the property at issue.”[30] More recently, the Supreme Court has 
explained:
 
Williamson 
County’s final decision requirement “responds 
to the high degree of discretion characteristically possessed by land-use boards 
in softening the strictures of the general regulations they administer.” 
Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 738 [] (1997). 
While a landowner must give a land-use authority an opportunity to exercise its 
discretion, once it becomes clear that the agency lacks the discretion to permit 
any development, or the permissible uses of the property are known to a 
reasonable degree of certainty, a takings claim is likely to have 
ripened.
 
* * * *
 
[A] landowner may not establish a taking before a land-use 
authority has the opportunity, using its own reasonable procedures, to decide 
and explain the reach of a challenged regulation. Under our ripeness rules a 
takings claim based on a law or regulation which is alleged to go too far in 
burdening property depends upon the landowner’s first having followed reasonable 
and necessary steps to allow regulatory agencies to exercise their full 
discretion in considering development plans for the property, including the 
opportunity to grant any variances or waivers allowed by law. As a general rule, 
until these ordinary processes have been followed the extent of the restriction 
on property is not known and a regulatory taking has not yet been established. 
See Suitum, supra, at 736, and n. 10 (noting difficulty of demonstrating 
that “mere enactment” of regulations restricting land use effects a taking). 
Government authorities, of course, may not burden property by imposition of 
repetitive or unfair land-use procedures in order to avoid a final decision. 
. . .[31]
 
This Court 
has said that “[a] ‘final decision’ usually requires . . . the denial 
of a variance from the controlling regulations” unless a request for variance 
would be futile.[32] Futility was the reason Hallco gave 
the federal court in its first action for not having requested a variance from 
the ordinance. The ordinance was crystal clear, Hallco argued, and applied 
specifically to its property, and there were no procedures for granting a 
variance. The County responded:
 
Contrary to [Hallco’s] assertion, the fact that the ordinance 
does not contain a provision for reviewing how the ordinance will be applied to 
particular property does not establish that it is futile; the Commissioners 
Court has the authority to grant a variance, or even to rescind the ordinance, 
if Hallco presents sufficient justification. Therefore, [Hallco’s] argument has 
no merit.
 
The County now 
insists that Hallco’s request for a variance should not have the effect of 
reviving its claim.
But ripening 
is not reviving. In a regulatory-takings case, the dispute must be sufficiently 
focused for the court to determine exactly how far a general land-use 
restriction extends in specific circumstances. General restrictions almost 
always have exceptions. The final-decision requirement allows regulators full 
discretion in adjusting restrictions to particular property before a 
constitutional obligation to compensate a landowner can be triggered. The County 
enacted its ordinance out of a concern, expressly stated, that “present 
technology available with regard to the installation, operation and maintenance 
of solid waste disposal sites is insufficient to prevent contamination of 
adjacent areas” (emphasis added). That was 20 months before the Commission 
issued Hallco a 78-page revised final draft permit with detailed specifications 
for the safe operation of the proposed landfill, and six years before Hallco 
requested a variance. It was certainly not unreasonable to expect that the 
County might be willing to reconsider the appropriateness of a three-mile zone 
if a landfill were required to be operated as set out in Hallco’s revised final 
draft permit, or as a result of changes in technology, or simply after taking 
another look at the situation. At least the County has always professed in court 
its willingness to do so, until now, and here we should take it at its word.
Hallco claims 
in this case that the County’s ordinance effects a taking as applied, not 
of any and all property proposed to be used as a landfill within three 
miles of Choke Canyon Lake, but only of property on which the prohibited 
operation is one that is subject to specifications like those in Hallco’s 
revised final draft permit. Just as a zoning authority might adjust generally 
applicable front- or side-yard requirements, or height or size restrictions, or 
other regulations affecting construction on property, depending on particular 
circumstances, a county’s determination of whether a landfill can be operated in 
an area may depend on the details of the operation.
Despite the 
County’s assurances in federal court that it could and would consider Hallco’s 
request for a variance, or for that matter, to repeal the ordinance altogether, 
it now protests that no procedure is prescribed for any such request to be made. 
Perhaps the County did not previously consider the absence of such procedure an 
inhibition to a request for a variance because it knew that general procedures 
permitted the request. As we have said,
 
the term “variance” is “not definitive or talismanic;” it 
encompasses “other types of permits or actions [that] are available and could 
provide similar relief.” The variance requirement is therefore applied flexibly 
in order to serve its purpose of giving the governmental unit an opportunity to 
“grant different forms of relief or make policy decisions which might abate the 
alleged taking.”[33]
 
In fact, the 
County received the request and allowed Hallco to present it to the 
commissioners court. In this way, the details of Hallco’s proposed operation as 
specified in the revised final draft permit and an evaluation of the economic 
impact of the ordinance on Hallco were presented to the commissioners court for 
its consideration. The County cites nothing that affirmatively prohibited it 
from amending its ordinance in response to the request. Instead, it insists that 
Hallco provided no justification for reconsideration.
The County 
suggests, apparently in the alternative, that Hallco should have requested a 
variance sooner, but the County cites no deadline for such a request and no 
authority for the argument that Hallco should have acted more diligently. A 
landowner’s decision to request a variance may involve many considerations, 
personal, economic, technical, and political. Timing may be critical. A 
landowner who wishes to make a facial challenge to a regulation, as Hallco did, 
should not be forced to request a variance before he believes he is in the best 
position to do so, or risk losing the facial challenge to limitations or the 
as-applied challenge to res judicata.
The County 
argues that allowing a regulatory-takings claim after every denial of a variance 
gives a landowner multiple bites at the apple, threatening repetitious and 
harassing litigation. But a landowner who is denied a variance, sues, loses, 
requests another variance, is denied again, and sues again, can expect the same 
result if the facts have not changed. If the apple is wormy, it is not clear why 
someone would take multiple bites. The expense of litigation and the possibility 
of sanctions for groundless lawsuits are ample deterrents. And if the facts have 
changed, so that the regulation as finally applied effects a taking, there is no 
reason to deny the landowner the compensation promised by the constitution.
The County 
adopted its ordinance without a scientific or technical basis for a zone of 
three miles as opposed to a shorter distance, and without a specific proposal 
for a landfill operation. In such circumstances it is especially important that 
there be an ample opportunity to consider a proposed land-use in detail before 
making a final decision that may result in a compensable taking. The Court says 
that the facts regarding Hallco’s proposed landfill operation have not changed 
since Hallco I. Perhaps not, but Hallco did not request the variance the 
County said it would consider until after Hallco I was concluded.
“Res 
judicata, or claims preclusion, prevents the relitigation of a claim or cause of 
action that has been finally adjudicated, as well as related matters that, with 
the use of diligence, should have been litigated in a prior suit.”[34] Because the as-applied claim Hallco 
makes in the present case was not ripe while Hallco I was pending, it was 
not, and could not have been, adjudicated in that case, and thus it is not 
barred by res judicata.
The County 
also argues that this action is barred by collateral estoppel. Collateral 
estoppel bars a claim only if “(1) the facts sought to be litigated in the 
second action were fully and fairly litigated in the first action; (2) those 
facts were essential to the judgment in the first action; and (3) the parties 
were cast as adversaries in the first action.”[35] The only fact specifically determined 
in Hallco I was that Hallco had no inherent right to operate a landfill. 
This fact is, of course, undisputed, and as I explain below, is not 
determinative of whether a compensable taking occurred. None of the issues on 
which Hallco’s claim depends — the economic impact of the ordinance on Hallco, 
the reasonableness of Hallco’s investment-backed expectations, and whether the 
ordinance singled Hallco out instead of promoting a public interest — was “fully 
and fairly litigated” in Hallco I. Even if the parties raised these 
issued in Hallco I, they were not “essential to the judgment”, which was 
based solely on the only issue specifically determined — that Hallco had no 
inherent right to operate a landfill. Moreover, the Court has held that courts 
should not strictly apply the elements of collateral estoppel when the purposes 
of the doctrine are disserved thereby.[36] Those purposes are disserved when the 
doctrine is used by the County to escape its representations to a federal 
judge.
The County 
further argues that this action is barred by limitations and laches. But the 
County does not argue that a regulatory-takings claim accrues for limitations 
purposes before it is ripe, and there is authority that it does not.[37] It is not entirely clear what statute 
of limitations applies to such claims,[38] but none is as short as three months, 
the time Hallco waited to file suit after the County refused to grant a 
variance. Thus, the claim is not barred by limitations. “Generally in the 
absence of some element of estoppel or such extraordinary circumstances as would 
render inequitable the enforcement of petitioners’ right after a delay, laches 
will not bar a suit short of the period set forth in the limitation statute.”[39] No such circumstances are present in 
this case.
III
The County 
contends that it has established that its ordinance did not effect a compensable 
taking of Hallco’s property. In Sheffield Development Co. v. City of Glenn 
Heights, we explained how a land-use regulation should be analyzed to 
determine whether it has effected a compensable taking:
 
[W]hether regulation has gone “too far” and become too much 
like a physical taking for which the constitution requires compensation requires 
a careful analysis of how the regulation affects the balance between the 
public’s interest and that of private landowners. While each case must therefore 
turn on its facts, guiding considerations can be identified, as the Supreme 
Court first explained in Penn Central Transportation Co. v. City of New 
York:
 
In engaging in these essentially ad hoc, factual inquiries, 
the Court’s decisions have identified several factors that have particular 
significance. The economic impact of the regulation on the claimant and, 
particularly, the extent to which the regulation has interfered with distinct 
investment‑backed expectations are, of course, relevant considerations. So, too, 
is the character of the governmental action. A “taking” may more readily be 
found when the interference with property can be characterized as a physical 
invasion by government, than when interference arises from some public program 
adjusting the benefits and burdens of economic life to promote the common 
good.
 
The Supreme Court has restated these factors simply 
as:
 
(1) “the economic impact of the regulation on the claimant”; 
(2) “the extent to which the regulation has interfered with distinct 
investment‑backed expectations”; and (3) “the character of the governmental 
action.”
 
Nevertheless, the Supreme Court has cautioned that these 
factors do not comprise a formulaic test. “Penn Central does not supply 
mathematically precise variables, but instead provides important guideposts that 
lead to the ultimate determination whether just compensation is required.” “The 
temptation to adopt what amount to per se rules in either direction must 
be resisted.”
 
Thus, for example, the economic impact of a regulation may 
indicate a taking even if the landowner has not been deprived of all 
economically beneficial use of his property. Nor are the three Penn 
Central factors the only ones relevant in determining whether the burden of 
regulation ought “in all fairness and justice” to be borne by the public. 
Whether a regulatory taking has occurred, the Supreme Court has said, “depend[s] 
on a complex of factors including” the three set out in Penn 
Central. The analysis “necessarily requires a weighing of private and public 
interests” and a “careful examination and weighing of all the relevant 
circumstances in this context.” As we have ourselves said of regulatory-takings 
issues, “we consider all of the surrounding circumstances” in applying “a 
fact‑sensitive test of reasonableness”.
 
We have said that while
 
determining whether a property regulation is unconstitutional 
requires the consideration of a number of factual issues, the ultimate question 
of whether a zoning ordinance constitutes a compensable taking or violates due 
process or equal protection is a question of law, not a question of fact. In 
resolving this legal issue, we consider all of the surrounding circumstances. 
While we depend on the district court to resolve disputed facts regarding the 
extent of the governmental intrusion on the property, the ultimate determination 
of whether the facts are sufficient to constitute a taking is a question of 
law.[40]
 
The court of 
appeals did not engage in this analysis. In Hallco I, it held simply that 
the County’s ordinance did not effect a taking of Hallco’s property because no 
landowner has “a property interest in disposal of solid waste on its 
property”.[41] The court simply “reaffirm[ed]” this 
holding in Hallco II. But no landowner has an unrestricted right to 
any use of property. Businesses can be zoned out of residential 
neighborhoods.[42] Home construction can be limited in 
size, height, and placement on the property.[43] Nuisances can be prohibited.[44] Every landowner’s right to use his 
property may be restricted by the government in the legitimate exercise of its 
police power and by the common law. These restrictions do not mean that 
landowners have no property interest in the use of their land, and stating that 
a particular use is subject to permit requirements says nothing about whether an 
ordinance prohibiting a use with the requisite permit constitutes a 
compensable taking. A taking occurs when the government interferes too far in a 
landowner’s use of property, regardless of the nature of the intended use.
Nor is it determinative that Hallco had not yet obtained a 
permit for its proposed landfill. The government cannot deny a landowner all 
reasonable use of his property and refuse to compensate him for the taking 
simply because his proposed use of his property requires a permit he has not yet 
obtained. If the government could avoid its constitutional obligation by denying 
permits, there would be little left to the guarantee of compensation.
A requirement 
that a permit be obtained before property can be used in a particular way does 
not preclude a landowner from having a reasonable, investment-backed expectation 
that he will succeed in obtaining the permit and pursue the intended use, 
contrary to the court of appeals’ conclusion in Hallco II. To be sure, 
the uses to which a piece of property has been put historically are important in 
assessing the reasonableness of a purchaser’s expectations,[45] but an expectation of a particular 
use of property is not unreasonable merely because it is new or subject to a 
permit requirement. Hallco appears to have anticipated correctly that obtaining 
a landfill permit was reasonably likely, since the Commission went so far as to 
issue a revised final draft permit. But the final permit never issued, and the 
reasons are not clear from the record before us. The record does not establish 
that Hallco’s expectations of operating a landfill were reasonable, but neither 
does it establish that they were unreasonable.
Even if the 
record were clearer on this point, and the reasonableness of Hallco’s 
investment-backed expectations could be better assessed, the issue of whether 
the County’s ordinance constituted a compensable taking could not be determined 
without an assessment of other relevant factors. Again, whether a land-use 
regulation is an unreasonable restriction amounting to a compensable taking 
requires a careful analysis of all relevant factors and circumstances. A 
formulaic approach cannot be used.
One factor 
that must be considered is the economic impact of the ordinance on the 
landowner. Hallco offered evidence that its property was worth $5.2 million as a 
landfill but only $58,300 with the ordinance in place, and that its proposed 
landfill business would be worth nearly $16 million. However, Hallco never 
obtained a final permit to operate a landfill, so it is unclear what the 
ultimate economic impact of the ordinance actually was. Also, the price of 
acquisition and the worth of the property put to other uses must be considered. 
And whatever the economic impact of the ordinance on Hallco, taking into account 
all pertinent information, economic impact is but one factor to be considered in 
determining whether there was a compensable taking.
Another 
factor, and one especially troubling in this case, is whether the County singled 
out Hallco without substantially advancing legitimate public interests. Although 
the United States Supreme Court has made clear that this not “a stand‑alone 
regulatory takings test that is wholly independent of Penn Central or any 
other test”,[46] this Court concluded in Sheffield 
that it may be a consideration in an appropriate case.[47] The County insists that it adopted 
the ordinance to protect the health and safety of its residents, but the record 
contains little solid evidence to support that assertion. The County’s 
resolution in January 1991 recited problems that could result from a 
landfill operation, but the County does not claim to have had any evidence that 
they actually would. Rather, the County simply opposed Hallco’s proposed 
use of its property. The operation of a landfill undeniably poses risks to 
surrounding areas, hence the requirement of a state permit. But the question is 
whether the County’s ordinance was directed at the risks or at Hallco. The 
Commission’s issuance of a revised final draft permit to Hallco over the 
objection of the County and others after two-and-one-half years of proceedings 
certainly suggests that the County’s professed concerns lacked firm footing. The 
county judge conceded that when the ordinance was adopted in July 1993, the 
County had no scientific or technical information to support the three-mile 
restriction. The County has yet to point to evidence that a landfill three miles 
from Choke Canyon Lake was safe when one two miles or one mile from the lake was 
not. At this point, the conclusion is certainly reasonable that the County’s 
decision was dictated, not by any evaluation of health or safety concerns, but 
by the fortuity that Hallco acquired property where it did.
The timing of 
the ordinance also suggests that it may have been directed at injuring Hallco 
rather than protecting the County. The County argues with some force that it had 
no reason to enact an ordinance prohibiting landfills near Choke Canyon Lake 
before Hallco purchased property and made its proposal in January 1991. That was 
the first time the issue had arisen. But the County offers no explanation for 
delaying adoption of an ordinance until July 1993. By that time, according to 
Hallco’s evidence, it had spent two years and over $800,000 on Commission 
proceedings and the proposed landfill, and was on the verge of obtaining a final 
draft permit. Had the County enacted an ordinance when it first learned of 
Hallco’s plans, Hallco might have deferred its application until it had tested 
the validity of the ordinance. Even if it had gone ahead, it would have done so 
knowing the obstacles it faced. A reasonable inference from the record before us 
is that the County delayed enactment of the ordinance merely to disadvantage 
Hallco in its proceedings before the Commission.
In 
Sheffield, the evidence was “quite strong” that the city had attempted to 
take unfair advantage of a developer by imposing a moratorium on development in 
specific response to the developer’s plans, extending the moratorium long after 
any purpose had been served, and delaying action on the developer’s plans until 
it could muster the votes for rezoning.[48] Although we found the city’s conduct 
“troubling”, we concluded that the delay may only have been lethargic, and that 
in the end the city had completed a comprehensive rezoning that arguably 
benefitted the entire community.[49] In the present case, by contrast, the 
evidence is stronger that the County’s delay was ill-motivated, and there is 
almost no evidence whether the ordinance benefitted the County’s residents or 
not.
Again, 
however, the character of the ordinance and the manner in which it was adopted 
are but factors to be considered in determining whether there was a compensable 
taking of Hallco’s property. Whether a regulatory taking has occurred is, as we 
have said, a question of law, but it must be answered after the relevant facts 
have been determined. Considering the evidence of the reasonableness of Hallco’s 
investment-backed expectations, the economic impact of the ordinance, and the 
singling out of Hallco without a legitimate public purpose, I would hold that 
the County failed to establish its entitlement to judgment as a matter of law. 
Because Hallco’s claim under the Texas Private Real Property Rights Preservation 
Act is based on its constitutional claims, the County was not entitled to 
summary judgment on the statutory claim.[50] It, too, should be remanded to the 
trial court for further proceedings.
* * *
Hallco is 
entitled to a decision on the merits of its claims that the County’s ordinance 
effected a compensable taking of its property. Because the Court disagrees, I 
respectfully dissent.
 
                                                                                    

Nathan L. Hecht
Justice
Opinion 
delivered: December 29, 2006






[1] Keystone Bituminous Coal Ass’n v. DeBenedictis, 
480 U.S. 470, 494 (1987) (recognizing “an important distinction between a claim 
that the mere enactment of a statute constitutes a taking and a claim that the 
particular impact of government action on a specific piece of property requires 
the payment of just compensation”); City of Corpus Christi v. Pub. Utils. 
Comm’n of Texas, 51 S.W.3d 231, 247 (Tex. 2001) (describing a takings claim 
as “an as‑applied constitutional challenge, rather than a facial 
challenge”).

[2] Yee v. City of Escondido, 503 U.S. 519, 533-534 
(1992) (“While respondent is correct that a claim that the ordinance effects a 
regulatory taking as applied to petitioners’ property would be unripe [because 
petitioners did not seek an exception], petitioners mount a facial challenge to 
the ordinance. . . . As this allegation does not depend on the extent 
to which petitioners are deprived of the economic use of their particular pieces 
of property or the extent to which these particular petitioners are compensated, 
petitioners’ facial challenge is ripe.” (citations omitted)); Mayhew v. Town 
of Sunnyvale, 964 S.W.2d 922, 930 (Tex. 1998) (“[A] final decision on the 
application of the zoning ordinance to the plaintiff’s property is not required 
if the plaintiff brings a facial challenge to the ordinance.”).

[3] Williamson County Regional Planning Comm’n v. 
Hamilton Bank, 473 U.S. 172, 186 (1985) (“[A] claim that the application of 
government regulations effects a taking of a property interest is not ripe until 
the government entity charged with implementing the regulations has reached a 
final decision regarding the application of the regulations to the property at 
issue.”); Mayhew, 964 S.W.2d at 929 (“[I]n order for a regulatory takings 
claim to be ripe, there must be a final decision regarding the application of 
the regulations to the property at issue.”).

[4] Mayhew, 964 S.W.2d at 929.

[5] Ante at ___ n.4.

[6] Ante at ___.

[7] Ante at ___.

[8] Ante at ___ (emphasis added).

[9] Tex. Health 
& Safety Code § 361.003(2)-(3) (“(2) ‘Class I industrial solid 
waste’ means an industrial solid waste or mixture of industrial solid waste, 
including hazardous industrial waste, that because of its concentration or 
physical or chemical characteristics: (A) is toxic, corrosive, flammable, a 
strong sensitizer or irritant, or a generator of sudden pressure by 
decomposition, heat, or other means; and (B) poses or may pose a substantial 
present or potential danger to human health or the environment if improperly 
processed, stored, transported, or otherwise managed. (3) ‘Class I nonhazardous 
industrial solid waste’ means any Class I industrial solid waste that has not 
been identified or listed as a hazardous waste by the administrator of the 
United States Environmental Protection Agency under the federal Solid Waste 
Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 
(42 U.S.C. Section 6901 et seq.).”); see also 40 C.F.R. § 261.4(b) 
(2006) (listing nonhazardous solid wastes).

[10] County Solid Waste Disposal Act, 62nd Leg., R.S., ch. 
516, § 18, 1971 Tex. Gen. Laws 1757, 1762 (stating in part that a county 
“may prohibit the disposal of any solid waste within the county if the disposal 
of the solid waste is a threat to the public health, safety, and welfare”) 
(codified as amended at Tex. Health 
& Safety Code § 364.012).

[11] See Tex. 
Health & Safety Code § 361.061 (stating that with exceptions not 
material to the present case, the Texas Commission on Environmental Quality “may 
require and issue permits authorizing and governing the construction, operation, 
and maintenance of the solid waste facilities used to store, process, or dispose 
of solid waste under this chapter”); id. § 361.086(a) (“A separate 
permit is required for each solid waste facility.”); 30 Tex. Admin. Code § 335.2 
(2006).

[12] McMullen County, Texas, Resolution No. 1-16-91 (Jan. 
14, 1991):
 
A RESOLUTION to 
oppose the establishment of an industrial landfill at a site on the Hallco 
Texas, Inc. property, being that 128.192 acre tract of land, found upon resurvey 
to contain 128.214 acres of land in the James Garner Survey No. 6, Abstract 5 of 
McMullen County.
 
WHEREAS the 
McMullen County Commissioner’s Court has reviewed this proposal and agreed 
unanimously that the establishment of this project would present a potential 
hazard to the health and well being of the residents of McMullen County 
and:
 
WHEREAS the 
project could, in the event of a spill, leak, or accident, contaminate the 
waters of the Frio and Nueces River and the water supplies of downstream users 
of water from those rivers:
 
WHEREAS the 
establishment of this project could in the event of a spill, leak or accident, 
pollute and contaminate the underground water sands that are the main source of 
drinking water for the rural residents of McMullen County livestock, and the 
Federal Correctional Institute, Three Rivers:
 
WHEREAS the the 
project could, in the event of a spill, leak, or accident, contaminate the 
vegetarian, animal life, and soil adjacent to and on the watershed below the 
proposed site:
 
WHEREAS this 
project could create an objectionable odor to neighboring residents of McMullen 
County.
 
NOW THEREFORE BE IT RESOLVED that the McMullen County Commissioner’s Court opposes 
the establishment of an industrial landfill on the Hallco Texas, Inc. property 
located in the James garner Survey No. 6, Abstract 5 of McMullen 
County.
 
Duly adopted at a meeting of the McMullen County 
Commissioner’s Court this 14th day of January, 1991.

[13] McMullen County, Texas, Ordinance No. 01-06-93 (June 
14, 1993):
 
AN ORDINANCE PROHIBITING SOLID WASTE DISPOSAL WITHIN 
THREE MILES OF CHOKE CANYON LAKE AND PROVIDING CIVIL AND CRIMINAL 
PENALTIES
 
Be it ordained, ordered and adopted by the commissioners 
court of McMullen County, Texas:
 
SECTION 
1.           GENERAL 
PROVISIONS
 
WHEREAS, the McMullen County Commissioners Court has 
both the responsibility and the authority to protect the health, safety, and 
welfare of the citizens of McMullen County, Texas; and
 
WHEREAS, a safe and abundant supply of drinking water is 
necessary to preserve and protect the health and welfare of the citizens of 
McMullen County, Texas; and
 
WHEREAS, the Choke Canyon Lake provides a portion of the 
drinking water for McMullen County as well as other counties and municipalities; 
and
 
WHEREAS, the soil in the area of the lake is porous and 
subsurface materials tend to be unstable and volatile;
 
WHEREAS, the disposal of solid waste within three (3) 
miles of Choke Canyon Lake would constitute a threat to the public health, 
safety and welfare; and
 
WHEREAS, the present technology available with regard to 
the installation, operation and maintenance of solid waste disposal sites is 
insufficient to prevent contamination of adjacent areas; and
 
WHEREAS, adequate waste disposal sites are available in 
portions of the county which are not in close proximity of the lake;
(a)           
IT IS THEREFORE ORDAINED AND ORDERED that the disposal of solid waste is 
prohibited within three (3) miles of Choke Canyon Lake.
 
(b)           
IT IS FURTHER ORDAINED AND ORDERED that the disposal of solid waste is not 
prohibited in any other area of the county, provided that any such site complies 
with all applicable state requirements.
 
SECTION 
2.           CIVIL REMEDIES 
AND PENALTIES
 
(a)           
Any violation of this ordinance is subject to a civil penalty of $10,000.00 for 
each violation. Such penalty to be forfeited to McMullen County, Texas. Each day 
that a violation continues constitutes a separate ground for 
recovery.
 
(b)           
The commissioners court of McMullen County, Texas, may bring a legal action to 
enjoin violations of this ordinance and seek judgment for any civil 
penalties.
 
SECTION 
3.           CRIMINAL 
PENALTY
 
(a)           
Disposal of solid waste in violation of this ordinance constitutes a 
Class C misdemeanor punishable by a fine not to exceed $500.00.
 
(b)           
Each day that a violation continues constitutes a separate offense under this 
ordinance.
 
SECTION 
4.           
SEVERABILITY
 
If any portion of this ordinance is deemed to be in 
violation of the statutes or the constitution of this state or the United States 
by a court of competent jurisdiction, said portion shall be severed, and the 
remaining portions of the ordinance shall remain in full force and 
effect.
 
SECTION 
5.           EFFECTIVE 
DATE
 
This ordinance shall become effective immediately upon 
adoption.
 
Read and adopted this  14th  day of 
June, 1993, by a vote of  5  ayes and  0  
nays.

[14] In 1999, the Legislature amended section 364.012 of the 
Health and Safety Code to add subsections (e) and (f) as follows:
 
(e)           
The commissioners court of a county may not prohibit the processing or disposal 
of municipal or industrial solid waste in an area of that county for 
which:
 
(1)           
an application for a permit or other authorization under Chapter 361 has been 
filed with and is pending before the commission; or
 
(2)           
a permit or other authorization under Chapter 361 has been issued by the 
commission.
 
(f)            
The commission may not grant an application for a permit to process or dispose 
of municipal or industrial solid waste in an area in which the processing or 
disposal of municipal or industrial solid waste is prohibited by an ordinance, 
unless the county violated Subsection (e) in passing the ordinance. The 
commission by rule may specify the procedures for determining whether an 
application is for the processing or disposal of municipal or industrial solid 
waste in an area for which that processing or disposal is prohibited by an 
ordinance.
 
Act of May 25, 1999, 76th Leg., R.S., ch. 570, § 5, 
sec. 364.012, 1999 Tex. Gen. Laws 3110, 3111. The amendment does not apply to a 
permit application filed before September 1, 1998, if on or before September 1, 
1999, a county had enacted an ordinance under section 364.012. Id. 
§ 6, 1999 Tex. Gen. Laws at 3112. Thus, this amendment does not apply in 
this case.

[15] McMullen County, Texas, Ordinance No. 01-06-93 (June 
14, 1993).

[16] Hallco Texas, Inc v. McMullen County, 934 F. 
Supp. 238, 240 (S.D. Tex. 1996), aff’d, 109 F.3d 768 (5th Cir. 1997) 
(table).

[17] Id. at 240; see U.S. Const. amend. V (“nor shall 
private property be taken for public use, without just 
compensation”).

[18] Tex. 
Const. art. I, § 17 (“No person’s property shall be taken, damaged 
or destroyed for or applied to public use without adequate compensation being 
made . . . .”).

[19] 473 U.S. 172, 185‑197 (1985); but see San Remo 
Hotel, L.P. v. City and County of San Francisco, 545 U.S. 323, 348 (2005) 
(Rehnquist, C.J., concurring) (indicating the Court may need to reconsider 
Williamson County’s requirement that a litigant pursue relief in state 
court first); Scott A. Keller, Note, Judicial Jurisdiction Stripping 
Masquerading as Ripeness: Eliminating the Williamson County State Litigation 
Requirement for Regulatory Takings Claims, 85 Tex. L. Rev. 199 (2006); J. David 
Breemer, You Can Check Out But You Can Never Leave: the Story of San Remo 
Hotel--the Supreme Court Relegates Federal Takings Claims to State Courts under 
a Rule Intended to Ripen the Claims for Federal Review, 33 B.C. Envtl. Aff. L. Rev. 247 
(2006).

[20] Hallco, 934 F. Supp. at 240.

[21] Hallco Texas, Inc. v. McMullen County, No. 
04‑96‑00681‑CV, 1997 Tex. App. LEXIS 2020, at *6-9, 1997 WL 184719, at *3 (Tex. 
App.—San Antonio April 16, 1997, no writ) (not designated for publication) 
(“Hallco I”).

[22] In 2003, the Legislature required the Commission to 
“adopt rules governing all aspects of the management and operation of a new 
commercial landfill facility that proposes to accept nonhazardous industrial 
solid waste for which a permit has not been issued” and to “suspend the 
permitting process for any pending application for [such] a permit 
. . . until the rules adopted . . . take effect.” Act of May 
27, 2003, 78th Leg., R.S., ch. 1117, §§ 1-2, 2003 Tex. Gen. Laws 3207, 
3207-3208. The Commission complied on March 19, 2004. 29 Tex. Reg. 2888 (2004); 
see also 30 Tex. Admin. 
Code §§ 335.580-.594.

[23] Tex. Gov’t 
Code § 2007.001-.045.

[24] At the time, case authority indicated that a party 
suing in state court to satisfy the Williamson exhaustion requirement 
could reserve federal claims for later litigation in federal court so that the 
state-court judgment would not bar the federal action. See Guetersloh 
v. State, 930 S.W.2d 284, 289-290 (Tex. App.—Austin 1996, writ denied), 
cert. denied, 522 U.S. 1110 (1998) (citing England v. Louisiana State 
Bd. of Med. Exam’rs, 375 U.S. 411, 415-416 (1964); Jennings v. Caddo 
Parish Sch. Bd., 531 F.2d 1331, 1332 (5th Cir. 1976); and Fields v. 
Sarasota Manatee Airport Auth., 953 F.2d 1299, 1305-1306 (11th Cir. 1992)). 
Since then, however, the United States Supreme Court has held that such a 
reservation does not avoid the preclusive effect of the state-court judgment. 
San Remo Hotel, L.P. v. City and County of San Francisco, 545 U.S. 323, 
338 (2005) (“England does not support [the] erroneous expectation that 
[a] reservation would fully negate the preclusive effect of the state-court 
judgment with respect to any and all federal issues that might arise in the 
future federal litigation.”).

[25] Hallco Texas, Inc. v. McMullen County, 
No. L-00-14 (S.D. Tex. April 24, 2000) (order dismissing action without 
prejudice for want of jurisdiction).

[26] Hallco II, 94 S.W.3d 735, 
738-739.

[27] Id. at 738.

[28] Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 
415-416 (1922); accord Sheffield Dev. Co. v. City of Glenn 
Heights, 140 S.W.3d 660, 670 (Tex. 2004) (footnotes 
omitted).

[29] MacDonald, Sommer & Frates v. County of 
Yolo, 477 U.S. 340, 348 (1986); accord Mayhew v. Town of 
Sunnyvale, 964 S.W.2d 922, 929 (Tex. 1998).

[30] Williamson County Regional Planning Comm’n v. 
Hamilton Bank, 473 U.S. 172, 186 (1985); accord Mayhew, 964 
S.W.2d at 929 (“[I]n order for a regulatory takings claim to be ripe, there must 
be a final decision regarding the application of the regulations to the property 
at issue.”).

[31] Palazzolo v. Rhode Island, 533 U.S. 606, 620-621 
(2001).

[32] Mayhew, 964 S.W.2d at 929.

[33] Id. at 930 (citations omitted).

[34] Barr v. Resolution Trust Corp., 837 S.W.2d 627, 
628 (Tex. 1992).

[35] John G. and Marie Stella Kenedy Mem. Found. v. 
Dewhurst, 90 S.W.3d 268, 288 (Tex. 2002); Sysco Food Servs., Inc. v. 
Trapnell, 890 S.W.2d 796, 801 (Tex. 1994).

[36] Sysco Food Servs., 890 S.W.2d at 801-804 
(holding that collateral estoppel would not be applied, even though all three 
factors were present, because application would not serve the doctrine’s 
intended purposes – it would not conserve judicial resources, prevent multiple 
lawsuits, or avoid the possibility of inconsistent findings – and fairness 
concerns were especially important in light of the procedural uniqueness of the 
case) (citing Blonder-Tongue Labs., Inc. v. University of Illinois 
Found., 402 U.S. 313, 328 (1971) (stating that preclusion doctrines have the 
“goal of limiting relitigation of issues where that can be achieved without 
compromising fairness in particular cases”)).

[37] Biddison v. City of Chicago, 921 F.2d 724, 
728-729 (7th Cir. 1991) (“several regulatory taking cases hold that a taking 
accrues at the same time that it ripens”) (citing Norco Constr. v. King 
County, 801 F.2d 1143, 1146 (9th Cir. 1986); Corn v. City of Lauderdale 
Lakes, 904 F.2d 585, 588 (11th Cir. 1990); and McMillan v. Goleta Water 
Dist., 792 F.2d 1453, 1457 (9th Cir. 1986)).

[38] Compare Maguire Oil Co. v. City of 
Houston, 69 S.W.3d 350, 358 n.4 (Tex. App.—Texarkana 2002, pet. denied) 
(“There is no specific statute of limitations for an inverse condemnation claim. 
However, courts have held the ten‑year statute of limitations to acquire land by 
adverse possession applies. Trail Enters., Inc. v. City of Houston, 957 
S.W.2d 625, 631 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); see 
also Tex. Civ. Prac. & Rem. Code 
Ann. § 16.026(a) (Vernon Supp. 2002); Brazos River Auth. v. City 
of Graham, 163 Tex. 167, 354 S.W.2d 99, 110 (1961); Waddy v. City of 
Houston, 834 S.W.2d 97, 102 (Tex. App.—Houston [1st Dist.] 1992, writ 
denied); Hudson v. Arkansas Louisiana Gas Co., 626 S.W.2d 561, 563 (Tex. 
App.—Texarkana 1981, writ ref’d n.r.e.); Hubler v. City of Corpus 
Christi, 564 S.W.2d 816, 823 (Tex. Civ. App.—Corpus Christi 1978, writ ref’d 
n.r.e.).”), with Tex. Civ. Prac. 
& Rem. Code § 16.003(a) (“a person must bring suit for trespass 
for injury to the estate or to the property of another . . . not later 
than two years after the day the cause of action accrues”).

[39] Barfield v. Howard M. Smith Co., 426 S.W.2d 834, 
840 (Tex. 1968) (citing K & G Oil Tool & Serv. Co. v. G & G 
Fishing Tool Serv., 314 S.W.2d 782 (Tex. 1958), and Culver v. 
Pickens, 176 S.W.2d 167 (Tex. 1944)).

[40] Sheffield Dev. Co. v. City of Glenn Heights, 140 
S.W.3d 660, 671-673 (Tex. 2004) (footnotes omitted).

[41] Hallco I, 1997 Tex. App. LEXIS 2020, at *8, 1997 
WL 184719, at *3.

[42] See, e.g., Village of Euclid v. Amber Realty 
Co., 272 U.S. 365, 390, 397 (1926) (upholding zoning regulations creating 
“residential districts, from which business and trade of every sort, including 
hotels and apartment houses, are excluded”); Lombardo v. City of Dallas, 
73 S.W.2d 475, 478 (Tex. 1934) (“The right to establish zoning districts is well 
established throughout the United States, and has been approved by the courts of 
many jurisdictions.”).

[43] See, e.g., City of Dallas v. 
Vanesko, 189 S.W.3d 768 (Tex. 2006).

[44] See, e.g., Northwestern Laundry v. City of 
Des Moines, 239 U.S. 486, 491-492 (1916) (“So far as the Federal 
Constitution is concerned, we have no doubt the State may by itself or through 
authorized municipalities declare the emission of dense smoke in cities or 
populous neighborhoods a nuisance and subject to restraint as such 
. . . .”).

[45] Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 937 
(Tex. 1998) (“Historical uses of the property are critically important when 
determining the reasonable investment‑backed expectation of the 
landowner.”).

[46] Lingle v. Chevron USA, Inc., 544 U.S. 528, 540 
(2005).

[47] Sheffield, 140 S.W.3d 660, 674 (Tex. 2004) 
(“Furthermore, apart from what the Supreme Court has said, we continue to 
believe for purposes of state constitutional law, as we held in [Mayhew, 
964 S.W.2d at 933-934], that the statement in Agins is correct: that 
whether regulation substantially advances legitimate state interests is an 
appropriate test for a constitutionally compensable taking, at least in some 
situations.”).

[48] Sheffield, 140 S.W.3d at 
678-679.

[49] Id. at 679.

[50] Tex. Gov’t 
Code § 2007.001-.045.