# NO. 12-20-00228-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: HARRIS CENTER FOR* | § | |
| *MENTAL HEALTH AND IDD,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

The Harris Center for Mental Health and IDD (Harris Center) filed this original proceeding to challenge Respondent's conclusion that Harris Center lacked standing to file a motion to revoke and to participate in a hearing on outpatient treatment regarding patient W.R.[1] We conditionally grant the writ.

## BACKGROUND

The State of Texas charged W.R. with deadly conduct involving discharge of a firearm, to which he pleaded "not guilty" by reason of insanity. On December 6, 2019, Respondent found W.R. "not guilty" by reason of insanity and ordered that he be committed to the maximum-security unit of Vernon State Hospital for a period not to exceed thirty days. On December 19, Texas Health and Human Services informed Respondent that the Chief of Forensic Medicine recommended that W.R. be initially treated in a non-maximum-security state hospital and would be admitted to Rusk State Hospital on December 30. On January 10, 2020, Rusk State Hospital informed Respondent that W.R.'s further hospitalization was not indicated at that time. Respondent signed an order for outpatient or community-based treatment and supervision on January 28. The order required that W.R. reside with his girlfriend in Pasadena,

---

[1] Respondent is the Honorable Campbell Cox, II, Judge of the 145th District Court in Nacogdoches County, Texas. The Real Parties in Interest are the State of Texas and W.R.

Texas and report to the Harris County South East Clinic in Houston, Texas the next business day after moving to his girlfriend's residence.[2]

On May 8, the State filed a motion to modify or revoke the January 28 order on grounds that W.R. was not in compliance with his treatment plan. At the July 8 hearing on the motion, conducted via Zoom, Catherine Rapaport from the Harris Center testified. After the State and W.R.'s counsel questioned Rapaport, Respondent stated, "Okay. Ms. Rapaport, this is all we need to hear from you. We certainly appreciate your time. And then the other two attorneys for the Harris Center, we appreciate you. Okay? But we're not going to ask Ms. Rapaport any more questions, so she can go ahead and hang up. And both counsel can do so as well." The following conversation transpired between Respondent and Harris Center's counsel, Cris Feldman:

> MR. FELDMAN: Thank you. Sorry. I was off mute. We are an interested party, and we would like to maintain our presence in this hearing.
>
> THE COURT: You can be -- well, the only two parties allowed are the State and [W.R.]. You can certainly -- if you wish to be an observer as though you were in the gallery, I will be happy to let you continue to listen, but I'll need both of you to mute yourself.
>
> MR. FELDMAN: Well, Your Honor, we do have a duty to report to the Court and to participate in the creation of any treatment plan or to at least express our opinion upon continued care.
>
> THE COURT: Where do you see that in Article 46 of the Code of Criminal Procedure? Point me towards –
>
> MR. FELDMAN: It's – I'm sorry, Your Honor. 46(c).265.
>
> THE COURT: Well, I think Ms. Rapaport did that under Subsection V when she said that he had failed to comply some with the regimen but not all of it and that he had become verbally abusive but had no -- no real evidence that he's likely to cause serious harm to another. Are you aware of any other healthcare workers -- not you but healthcare workers -- that want to testify about his possibly failing to comply with the regimen or that he's likely to cause serious harm to another?
>
> MR. FELDMAN: Well, I think … Ms. Rapaport has several text messages from Ms. -- for the significant other of [W.R.] that would further enlighten the Court as to the situation.
>
> THE COURT: So you're saying Ms. Rapaport has these text messages?
>
> MR. FELDMAN: Yes, sir.

At this point, Respondent began questioning Rapaport about the text messages from W.R.'s girlfriend. Harris Center's counsel interjected to assist the line of questioning. W.R.'s

---

[2] Harris Center filed a notice of appeal from this order. This Court dismissed that appeal for want of prosecution. *See Protection of W.L.R.*, No. 12-20-00041-CV, 2020 WL 1933587 (Tex. App.—Tyler Apr. 22, 2020, no pet.) (mem. op.).

counsel objected to "Mr. Feldman testifying or, you know, talking to the Court with regard to any of the witnesses in this case. He is not a party of this case." W.R.'s counsel further argued as follows:

> And we look at 46(c).266, which is regarding the revocation ordered by this Court with regard to [W.R.]. It clearly states that the Court, on its own motion or the motion of any interested person. Now, the interested person who filed this motion is the State of Texas. It's not of the Harris County Center.
> So the Court is correct where it states that he can listen to this all he wants, but he is not an actual party in this motion. That is the State of Texas, and they are aptly represented by Ms. Nicole LoStracco in this case.

Respondent sustained the objection. After a break, Respondent stated that his bailiff "has now taken out the two attorneys for the Harris Center as well as Ms. Rapaport." Respondent explained that he did so because Rapaport "continued to be nonresponsive," and because the two Harris Center attorneys were supposed to listen and observe, but Mr. Feldman would not do so and there was "no more use" in the other attorney's presence. At the conclusion of the hearing, Respondent found that the State failed to establish by clear and convincing evidence that W.R. did not comply with the treatment regimen or that he has become likely to cause serious harm to another. Respondent denied the State's motion and explained to W.R. that he still must follow the treatment program with the Harris Center.

On August 21, Harris Center filed its own motion to revoke and requested a hearing. On August 26, Respondent signed an order finding probable cause to revoke the order for outpatient/community-based treatment and supervision and instructing any on-duty peace officer to take W.R. into custody. In an August 28 email to Feldman, Respondent stated that he allowed Feldman to watch the Zoom hearing as a courtesy because Harris Center had an employee testifying, but had the hearing been in person, Feldman would not have been allowed to speak because Harris Center is not a party. Respondent stated, "You do not have standing to file any motion in this case because your client is not a party." According to Respondent, upon receiving Harris Center's motion to revoke, he notified the Nacogdoches County District Attorney, signed an order for W.R.'s detention, instructed his court coordinator to notify W.R.'s counsel that W.R. would be detained and a hearing would be held based on an application soon to be filed by the District Attorney. Respondent stated, "You will not be allowed to attend the next hearing via Zoom due to the fact that at the last hearing you continued to speak after being told by me that

3

you could not. You can still attend/observe in person, but will not be allowed to speak." Harris Center filed this original proceeding on September 29.

## PREREQUISITES TO MANDAMUS

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). To be entitled to mandamus relief, a relator must demonstrate that (1) the trial court clearly abused its discretion and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). The relator has the burden of establishing both of these prerequisites. *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding). Consideration of a motion that is properly filed and before the trial court is a ministerial act, and mandamus may issue to compel the trial court to conduct a hearing and rule on the motion. *Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992) (orig. proceeding); *In re Gerstner*, 02-15-00315-CV, 2015 WL 6444797, at *1 (Tex. App.—Fort Worth Oct. 23, 2015, orig. proceeding) (mem. op.). Article 46C.266 requires that Respondent conduct a hearing on a motion to revoke within seven days of its filing. TEX. CODE CRIM. PROC. ANN. art. 46C.266(e) (West 2018). As a result, if Harris Center has standing to file the motion to revoke, mandamus is an appropriate remedy to require that Respondent set a hearing on the motion.

## ABUSE OF DISCRETION

Harris Center argues that Respondent abused its discretion in determining that it does not have standing to file a motion to modify or revoke W.R.'s outpatient treatment or participate in the hearing.

### Standard of Review and Applicable Law

Standing is a fundamental element of a court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993). In Texas, the standing doctrine demands (1) that there be a "real controversy between the parties" and (2) that the controversy "will be actually determined by the judicial declaration sought." *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) (quoting *Tex. Air Control Bd.*, 852 S.W.2d at 446) (internal quotation marks omitted)). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest'

4

in its outcome." ***Austin Nursing Ctr., Inc. v. Lovato***, 171 S.W.3d 845, 848 (Tex. 2005). A plaintiff must affirmatively show, through pleadings and other evidence pertinent to the jurisdictional inquiry, a distinct interest in the asserted conflict, such that the defendant's actions have caused the plaintiff some particular injury. ***Hunt v. Bass***, 664 S.W.2d 323, 324 (Tex. 1984); *see* ***Cty. of Cameron v. Brown***, 80 S.W.3d 549, 555 (Tex. 2002). Whether a plaintiff has standing is a legal question we review de novo. *See* ***Mayhew v. Town of Sunnyvale***, 964 S.W.2d 922, 928 (Tex. 1998).

Texas Code of Criminal Procedure Chapter 46C governs the raising of the insanity defense, the determination of a defendant's sanity, and the disposition of a defendant after a finding of not guilty by reason of insanity. If a defendant is found not guilty by reason of insanity ("an acquitted person"), the trial court shall determine whether the charged offense involved conduct that (1) caused serious bodily injury to another person, (2) placed another person in imminent danger of serious bodily injury, or (3) consisted of a threat of serious bodily injury to another person through the use of a deadly weapon. TEX. CODE CRIM. PROC. ANN. art. 46C.157 (West 2018). If, as in the present case, the court determines that the offense involved a deadly weapon, the court retains jurisdiction over the acquitted person until either the court discharges the person and terminates its jurisdiction or the cumulative total period of institutionalization and outpatient or community-based treatment and supervision equals the maximum term provided by law for the offense of which the person was acquitted by reason of insanity. *Id.* art. 46C.158 (West 2018).

When the court makes a finding that the offense involved dangerous conduct, the court shall order the acquitted person to be committed for a period not to exceed thirty days in order to evaluate the person's present mental condition and to determine the "proper disposition of the acquitted person," for example, whether inpatient treatment is necessary or whether outpatient treatment is appropriate. *Id.* art. 46C.251(a), (d) (West Supp. 2020). The trial court must hold a disposition hearing within thirty days of acquittal. *Id.* art. 46C.251(d). At the hearing, the court must address (1) whether the acquitted person has a severe mental illness or mental retardation; (2) whether as a result of any mental illness or mental retardation the person is likely to cause serious harm to another; and (3) whether appropriate treatment and supervision can be safely and effectively provided as outpatient or community-based treatment and supervision. *Id.* art. 46C.253(b) (West 2018).

The trial court shall order the acquitted person committed to a mental hospital for inpatient treatment or residential care if the State establishes by clear and convincing evidence that: (1) the person has a severe mental illness or mental retardation; (2) the person, as a result of that mental illness or mental retardation, is likely to cause serious bodily injury to another if the person is not provided with treatment and supervision; and (3) inpatient treatment or residential care is necessary to protect the safety of others. *Id*. art. 46C.256(a) (West 2018). In determining whether the State has proved that inpatient treatment is necessary, the court shall consider whether the evidence shows both that (1) an adequate regimen of outpatient or community-based treatment will be available to the acquitted person; and (2) the person will follow that regimen. *Id*. art. 46C.256(b). An order for commitment to inpatient treatment expires on the 181st day after the date the order is issued, but it is subject to renewal as provided by statute. *Id*. art. 46C.256(c).

A trial court that orders an acquitted person committed to inpatient treatment shall determine on an annual basis whether to renew the order. *Id*. art. 46C.261(a) (West 2018). At least thirty days before the order is scheduled to expire, the institution to which the acquitted person is committed or the State may request that the commitment order be renewed. *Id*. art. 46C.261(b). The court "shall renew the order only if the court finds that the party who requested the renewal has established by clear and convincing evidence that continued mandatory supervision and treatment are appropriate." *Id*. art. 46C.261(h). The court may modify the order to provide for outpatient treatment "if the court finds the acquitted person has established by a preponderance of the evidence that treatment and supervision can be safely and effectively provided as outpatient or community-based treatment and supervision." *Id*. art. 46C.261(i). A renewed order authorizes inpatient or outpatient treatment for not more than one year. *Id*. art. 46C.261(h).

The trial court may order an acquitted person to participate in outpatient treatment on renewal of a commitment order under Article 46C.261. *Id*. art. 46C.263(a) (West 2018). If the trial court signs an order requiring the acquitted person to participate in outpatient treatment, the order "must identify the person responsible for administering an ordered regimen of outpatient or community-based treatment and supervision." *Id*. art. 46C.263(f).

The court, on its own motion or the motion of any interested person and after notice to the acquitted person and a hearing, may modify or revoke court-ordered outpatient or

6

community-based treatment and supervision. *Id.* art. 46C.266(a) (West 2018). At the hearing, the court shall determine whether the state has established by clear and convincing evidence that: (1) the acquitted person failed to comply with the regimen in a manner or under circumstances indicating the person will become likely to cause serious harm to another if the person is provided continued outpatient or community-based treatment and supervision; or (2) the acquitted person has become likely to cause serious harm to another if provided continued outpatient or community-based treatment and supervision. *Id.* art. 46C.266(b).

**Analysis**

Harris Center argues that Respondent abused his discretion when he determined Harris Center did not have standing to file the motion to revoke outpatient treatment and would not permit Harris Center to participate in the hearing. Harris Center urges that as the treatment facility, it is an "interested person" under the statute. We agree.

Chapter 46C allows any "interested person" to file a motion to modify or revoke outpatient treatment. As a result, an "interested person" necessarily has standing. *See In re Lankford*, 501 S.W.3d 681, 684 (Tex. App.—Tyler 2016, orig. proceeding) ("When standing has been statutorily conferred, the statute itself serves as the proper framework for the standing analysis"). "Interested person" is not defined by the statute. When there is no legislative definition of a term, we rely on the plain meaning of the text unless a different meaning is apparent from the context or the plain meaning leads to absurd results. *In re Davidson*, 485 S.W.3d 927, 930 (Tex. App.—Tyler 2016, orig. proceeding). As stated above, standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome. *Lovato*, 171 S.W.3d at 848. As the facility providing outpatient treatment to W.R., Harris Center clearly has a "justiciable interest" in whether W.R. complies with the treatment and its ability to effectively provide the required services.

Furthermore, Chapter 46C recognizes the treatment facility's interest in the order for outpatient treatment. The trial court must obtain the facility's consent to provide its services. TEX. CODE CRIM. PROC. ANN. art. 46C.264(b) (West 2018). The statute also mandates monitoring and reporting requirements for the treatment facility and authorizes the treatment facility to seek detention of the acquitted person pending the hearing on the motion to revoke. *Id.* arts. 46C.265, 46C.267(a) (West 2018). In addition, when a facility is bound by an order, it clearly has an interest in the judgment or order. *See In re Evans*, 130 S.W.3d 472, 478-79 (Tex.

7

App.—Houston [14th Dist.] 2004, orig. proceeding) (holding that outpatient facility had standing to challenge order requiring outpatient mental health services under previous statute). Harris Center is clearly bound by Respondent's order requiring outpatient treatment. As a result, Harris Center is an interested person under Article 46C.266 and has standing to file the motion to revoke outpatient treatment. Therefore, Respondent abused his discretion in finding that Harris Center lacked standing to file the motion.

Harris Center further urges that it not only has standing to file the motion but also that it should be permitted to participate in the hearing on its motion. W.R. argues that Harris Center cannot be considered a party under the statute because the State bears the burden of proof. However, W.R.'s proposed construction renders the ability of an "interested person" to file the motion to revoke meaningless. *See **Tex. Lottery Comm'n v. First State Bank of DeQueen***, 325 S.W.3d 628, 635 (Tex. 2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind."); ***Columbia Med. Ctr. of Los Colinas, Inc. v. Hogue***, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous"). We have already determined that Harris Center has standing to file the motion. And a party with standing necessarily has the right to be heard on its motion, which suggests the ability to appear in court and present evidence and argument. *See **Tex. Ass'n of Bus. v. City of Austin, Tex.***, 565 S.W.3d 425, 434 (Tex. App.—Austin 2018, pet. denied). Furthermore, due process requires interested parties be given an opportunity to be heard. *See **Campbell v. Stucki***, 220 S.W.3d 562, 570 (Tex. App.—Tyler 2007, no pet.). As such, Respondent deprived Harris Center of the fundamental requirement of due process, an opportunity to be heard, and abused his discretion in doing so.

## DISPOSITION

For the reasons set forth above, we conclude that Harris Center has shown its entitled to mandamus relief. Accordingly, we ***conditionally grant*** Harris Center's petition for writ of mandamus and direct Respondent to notify W.R. and set a hearing on Harris Center's motion to revoke outpatient treatment. We trust Respondent will promptly comply with this opinion and order. The writ will issue only if Respondent fails to do so ***within ten days of the date of the opinion and order***. Respondent shall furnish this Court, within the time for compliance with this Court's opinion and order, a certified copy of his order evidencing such compliance.

8

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 18, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# <u>ORDER</u>

**NOVEMBER 18, 2020**

**NO. 12-20-00228-CV**

**HARRIS CENTER FOR MENTAL HEALTH AND IDD,**
Relator
V.

**HON. CAMPBELL COX, II,**
Respondent

ON THIS DAY came to be heard the petition for writ of mandamus filed by Harris Center for Mental Health and IDD; who is the relator in appellate cause number 12-20-00228-CV and an interested person in trial cause number F1924026, pending on the docket of the 145th Judicial District Court of Nacogdoches County, Texas. Said petition for writ of mandamus having been filed herein on September 29, 2020, and the same having been duly considered, because it is the opinion of this Court that the petition is meritorious, and the same is, hereby **conditionally granted**.

And it is further the opinion of this Court that Respondent will act promptly and direct Respondent to notify W.R. and set a hearing on Harris Center's motion to revoke outpatient treatment. The writ will issue only if the trial court fails to do so *within ten days of the date of the opinion and order*. The trial court shall furnish this court, within the time for

10

compliance with this court's opinion and order, a certified copy of this order evidencing such compliance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*